UNITED STATES of America,
Plaintiff–Appellee,

v.

Mark Roy ANDERSON, Defendant–
Appellant.

No. 91–50395.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 9, 1992.

Decided May 20, 1993.

Loretta Shartis, Sherman Oaks, CA, for defendant-appellant.

George Cardona, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: BROWNING, SCHROEDER, and FLETCHER, Circuit Judges.

FLETCHER, Circuit Judge:

Mark Roy Anderson, who pleaded guilty to two counts of a thirty-count indictment for mail fraud in violation of 18 U.S.C. § 1341, appeals his conviction and sentence on the grounds that the district court coerced Anderson into pleading guilty and impermissibly participated in the plea bargaining process, improperly reserved judgment on Anderson's motion regarding a state grant of immunity until after trial, erred in considering all of the fraudulent activities alleged in the indictment in sentencing Anderson, and ordered restitution in excess of that permitted by law. Because the trial judge improperly influenced the plea negotiation process, we vacate Anderson's conviction.

## FACTS AND PROCEDURAL HISTORY

In the mid–1980's, Anderson, acting through certain companies that he controlled, established and promoted a series of limited partnerships for the ostensible purpose of buying and restoring historic buildings. According to the indictment, very little of the $6.8 million raised by Anderson in connection with these projects was actually used to purchase or refurbish the properties in question. Instead, it is alleged, Anderson illicitly withdrew investors' funds from escrow accounts and redistributed the monies according to an elaborate Ponzi scheme to benefit himself and other entities he controlled.

Anderson was indicted for thirty counts of mail fraud on March 6, 1991. On April 10, 1991 he appeared before the district court and entered a plea of not guilty to the charges. We recount the events at the April 10 hearing in some detail because it is at this hearing that Anderson contends he was pressured into changing his plea by the district judge.

After Anderson entered his not guilty plea, the judge set a trial date of April 30, 1991, commenting as he did so that "both counsel have indicated it's going to take six weeks to try. I don't believe it's going to take any six weeks to try. I'm a former accountant and this is a—seems to me a very, very simple case." (Reporter's Transcript ("R.T.") of 4/10/91 Hearing at 4–5.) Anderson's attorney objected to the swift trial date, explaining that he had just picked up the case the previous Monday, had first met with the prosecutor the day before, and that there were numerous boxes of documents to review and witnesses to interview in what he perceived to be a complex case. After the court reiterated its view that it would not be a difficult case for anyone to try, defense counsel stated that in order to represent his client effectively, he would need more time to prepare for trial. The district judge responded as follows:

Well, you had a former attorney in the case and there was an agreed-upon plea bargain or plea agreement in this matter that I understand has been backed away from. And I have no problem with that except to tell you this. I will not accept a plea from this point on in this case unless it is to all counts. So I mean, I'm telling the Government at this point not to make any deals because I will not honor any deals or recommendations that you make in this case.

In the event of a verdict the Court wants complete control over these cases. I don't believe in—in plea negotiations at all. So with regard to this matter, I'm prepared to try it because the maximum trial time on this case, according to our records counsel, is May the 23rd, 1991.

(*Id.* at 6.)

Anderson's attorney countered that he was of the opinion that his preparation time would be excludable from the speedy trial

clock. He also pointed out that there was an issue to be resolved before trial of whether the government's evidence was tainted by a grant of immunity to Anderson in connection with a state receivership action in which Anderson had testified. Without giving its reasons for postponing its ruling, the court reserved the right to decide the immunity issue at the conclusion of the trial.

After defense counsel continued to press for more preparation time, and in deference to the AUSA's trial schedule, the court finally agreed to reschedule the trial for May 14. At this juncture, Anderson, through his counsel, requested a ten-minute break. Following the recess, Anderson's attorney inquired "whether, based on the statements the Court has made already, the Court might still consider entertaining a plea in this matter as late as Friday of this week," noting that the prosecutor had indicated that the deal would remain open until that time. (*Id.* at 10.) The court agreed to continue the case until Friday, stating,

> I don't want to coerce anything out of the defendant in this particular case, but you must—and I know your schedule's probably busy. You must sit down and explain what the ramifications are.
>
> See, I don't believe in negotiations once it leaves Arraignment Court. I'm not Monty Hall, this is not "Let's Make a Deal."

(*Id.* at 11.)

Two days later, on April 12, 1991, Anderson appeared before the district court and pleaded guilty to counts nine and twelve pursuant to a plea agreement under which the government agreed to dismiss the remaining counts of the indictment. At the change of plea hearing, the court asked Anderson whether there had been any threats made against him or any member of his family that had compelled him to plead guilty, to which Anderson responded, "No." (R.T. of 4/12/91 Hearing at 9.) Anderson also stated that he was entering his plea on a free and voluntary basis.

The district court sentenced Anderson to consecutive terms of imprisonment of five years on count nine and two years on count twelve, and ordered him to pay restitution in the amount of $6,770,000 to the state-appoint-

ed receiver acting on behalf of the investors. This appeal ensued.

## DISCUSSION

Anderson asserts that he should be permitted to withdraw his plea of guilty because it was not freely entered and because the court violated Federal Rule of Criminal Procedure 11 by improperly injecting itself into the plea bargaining process.

### A. Voluntariness

In order to be valid, a guilty plea must be voluntary and intelligent, and cannot be the result of threats, misrepresentations, or improper promises. *Hill v. Lockhart,* 474 U.S. 52, 56, 106 S.Ct. 366, 369, 88 L.Ed.2d 203 (1985); *Mabry v. Johnson,* 467 U.S. 504, 509, 104 S.Ct. 2543, 2547, 81 L.Ed.2d 437 (1984). The voluntariness of a guilty plea is generally reviewed de novo on appeal after a defendant has made an unsuccessful attempt to withdraw his plea below. *See United States v. Zweber,* 913 F.2d 705, 710 (9th Cir.1990). In considering the issue of voluntariness, a reviewing court must examine the totality of circumstances surrounding the plea. *Iaea v. Sunn,* 800 F.2d 861, 866 (9th Cir.1986).

Anderson did not raise the voluntariness of Rule 11 concerns or seek to withdraw his plea in the trial court. Ordinarily we will not review issues not properly presented below. But because "[t]he comments by the district court regarding the plea negotiations are all on the record [and] there is no factual dispute regarding their nature," Anderson's challenge is a question of law, and we may address it. *United States v. Bruce,* 976 F.2d 552, 555 (9th Cir.1992). We do so with the understanding that a finding of judicial misconduct in connection with a plea proceeding constitutes plain error and entitles a defendant to withdraw his guilty plea even if the error is identified for the first time on appeal. *Id.* at 554; *United States v. Sanchez–Lopez,* 879 F.2d 541, 551 (9th Cir.1989).

Despite the district court's representation to the contrary, the April 10 hearing in fact bore some resemblance to an episode from *Let's Make a Deal.* The judge's open-

ing pronouncement that he would not after that date accept a plea to fewer than all thirty counts of the indictment and admonishment that the government was not to "make any deals," aside from constituting improper judicial intervention in the plea negotiation process, as is discussed below, meant that Anderson had to decide immediately whether he wished to change the not guilty plea he had just entered to one of guilty. By the end of the hearing the court permitted Anderson two more days to consider his options, but only after Anderson had given some indication that he might in fact be amenable to entering a guilty plea, and the court's sanction for not going ahead with the plea still hung in the air. The timing of Anderson's apparent change of heart and his attorney's reference to "the statements the Court ... made" in inquiring as to the court's willingness to entertain a guilty plea two days later strongly suggest that the position taken by the district judge was a substantial factor in Anderson's decision. Indeed, it is difficult to imagine how Anderson could not have felt pressured when confronted with the court's "now or never" tactics at the April 10 hearing.

■ The court's refusal to grant a continuance to Anderson's newly appointed counsel to prepare for what would appear to be at least a moderately complicated trial contributed to the coercive atmosphere. The decision whether to grant a continuance is within the discretion of the trial court, so long as a defendant's due process rights are not violated. *United States v. Bogard,* 846 F.2d 563, 566 (9th Cir.1988). We have no occasion here to decide whether the district court abused its discretion in denying the continuance or ran afoul of due process. We do note, however, that even though the judge, in a not overly generous concession, ultimately did push the trial date back two weeks, his unwillingness to grant more time in the face

of numerous and persistent well-founded requests on the part of Anderson's attorney might well have been interpreted by Anderson as a sign that his interests would be jeopardized if he chose to go to trial.[1]

In assessing the voluntariness of Anderson's plea, we are mindful of the fact that at his change of plea hearing, Anderson denied having been threatened and stated that his plea was wholly voluntary. "[S]tatements made by a criminal defendant contemporaneously with his plea should be accorded great weight" because "[s]olemn declarations made in open court carry a strong presumption of verity." *Chizen v. Hunter,* 809 F.2d 560, 562 (9th Cir.1986). In this case, where the "threat" faced by the defendant was the stance adopted by the district judge toward his case, Anderson's responses to the judge's questioning during the formalistic colloquy do not allay our concerns regarding voluntariness.

We conclude, in light of all the circumstances, that the district judge imposed unreasonable constraints on Anderson's decisionmaking process, and that those constraints rendered his guilty plea involuntary. While we are sympathetic to the district judge's apparent desire to treat the case expeditiously, we cannot condone case management that interferes with the defendant's right to a fair disposition of his case.

**B. Court's Participation in Plea Negotiations**

■ The second ground for our conclusion that Anderson's conviction cannot be sustained is that the district judge failed to abide by the safeguards established by Federal Rule of Criminal Procedure 11. Rule 11 addresses plea bargaining discussions between the government and a defendant. It flatly proscribes court participation "in any such discussions." Fed.R.Crim.P. 11(e)(1). Regardless of whether he has shown actual

---

1. Anderson's additional claim that the court's refusal to rule on the immunity issue prior to trial impinged upon the voluntariness of his plea is unavailing. Anderson has not shown how this particular action impaired his ability to go to trial. The judge said he would rule on it later, and an adverse ruling would have been appealable. Thus, the immunity defense was not foreclosed to Anderson if he went to trial. *Cf. United States v. Montilla,* 870 F.2d 549 (9th Cir.1989),

*amended and opinion substituted in part,* 907 F.2d 115 (9th Cir.1990) (trial judge's decision to delay consideration of a defendant's motion to dismiss for outrageous government conduct until after trial was not an abuse of discretion and did not violate the defendant's constitutional rights, even though it put her in the position of having to choose between asserting a constitutional claim and accepting the government's plea offer).

prejudice, a defendant who has pleaded guilty after the judge has participated in plea discussions is entitled to replead. *United States v. Bruce,* 976 F.2d 552, 558 (9th Cir. 1992).

In *Bruce,* our court treated the Rule 11(e)(1) prohibition in some depth. In that case, the district court advised the defendants at a hearing to "think about" the plea bargain the government was offering, and to consider the fact that they were facing a life sentence "[v]ersus a prospective 42 months [under the plea agreement].... I mention [the life sentence] to you because the new laws are so heavy, so very, very heavy, and I am the one that has to impose that sentence if you are found guilty on all of these things." *Id.* at 555. The *Bruce* panel, reasoning that judicial participation in the plea bargaining process "inevitably carries with it the high and unacceptable risk of coercing a defendant to accept the proposed agreement and plead guilty," interpreted Rule 11's ban as an absolute command which "admits of no exceptions" and vacated Bruce's conviction. *Id.* at 556, 558.

In the case at hand, the court's prospective refusal to accept a plea to fewer than the full thirty counts, and direction to the prosecutor not to offer any such deal in the future, usurped the government's role and made the judge a participant in the plea negotiation process. Although the district judge's comments in this case did not directly address Anderson's decision whether to plead guilty, they were more obviously coercive than those we found unacceptable in *Bruce* since they effectively threw the weight of the court behind the prosecution.

The government rightly points out that a defendant has no constitutional right to plea bargain. *United States v. Wheat,* 813 F.2d 1399, 1405 (9th Cir.1987), *aff'd,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). But a trial court may not flatly reject all potential offers by the government. As we explained in *United States v. Miller,* 722 F.2d 562 (9th Cir.1983), a case in which the district court refused to accept any charge bargains that left standing only one count of a multiple-count indictment, it is an abuse of discretion to impose categorical rules on plea bargaining: "Rule 11 permits district courts

to assess the wisdom of plea bargains; this grant of power carries with it the duty to exercise it responsibly. When a court establishes a broad policy based on events unrelated to the individual case before it, no discretion has been exercised." *Id.* at 564–65.

Here the district court's ex ante rejection of any "deals," especially when viewed in the context of the judge's express desire to retain "control" over Anderson's case and general distaste for plea bargaining, was a clear abuse of discretion and violated Rule 11(e)(1)'s absolute prohibition on court participation in the plea negotiation process.

## CONCLUSION

Because Anderson's guilty plea was not voluntarily entered and the district judge improperly participated in the plea discussions, the plea cannot stand. In light of our conclusion that Anderson must be permitted to replead, we need not reach the other issues Anderson raises on appeal.

Anderson's conviction is **VACATED** and the case **REMANDED** to the district court for further proceedings consistent with this opinion.