21 F.3d 1117
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Alberto LOPEZ-YANEZ, Defendant-Appellant.
 No. 93-50125.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 2, 1994.
Decided April 5, 1994.
 
 Before: SNEED, THOMPSON, and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Luis Alberto Lopez-Yanez, the defendant, appeals his conviction and sentence under the Sentencing Guidelines following his guilty plea to possession of methamphetamine with intent to distribute in violation of 21 U.S.C. Sec. 841(a)(1). The issues on appeal are: (1) whether the defendant's plea was involuntary; (2) whether the government breached the plea agreement; (3) whether there was a Jencks Act violation; and (4) whether the defendant should have received a lighter sentence. Lopez-Yanez asks this court to reverse the district court's denial of his motion to withdraw his guilty plea or, alternatively, to vacate his sentence and remand so the district court can consider his cooperation as a basis for a downward departure. We have jurisdiction over this timely appeal under 28 U.S.C. Sec. 1291 and 18 U.S.C. Sec. 3742(a). We affirm.
 
 I.
 FACTS AND PRIOR PROCEEDINGS
 
 3
 On January 11, 1992, Lopez-Yanez sold fifty-five grams of methamphetamine to a confidential informant. On January 15th, he negotiated a sale of ten pounds of methamphetamine with undercover agent Charles Potter. He agreed to deliver another forty pounds after being paid.
 
 
 4
 On January 16, 1992, Potter met Lopez-Yanez at a motel. After Potter showed him the money, they went to a car in the parking lot. Lopez-Yanez unlocked the trunk and showed Potter the drugs. At this point, Potter arrested him.
 
 
 5
 Lopez-Yanez was charged with one count of conspiracy to possess methamphetamine with intent to distribute and one count of possession of methamphetamine with intent to distribute. He pleaded guilty to the second count. Under the plea agreement, the government agreed to consider his cooperation under the terms of an attached cooperation agreement. The cooperation agreement provided in relevant part:
 
 
 6
 Your client will cooperate with the Government in the hope that the custodial sentence will be reduced.... Based upon his cooperation, the Government may make a motion for the court to depart downward from the otherwise applicable sentence. The decision whether to bring this motion is in the sole discretion of the United States Attorney's Office.
 
 
 7
 The Government will, in good faith, evaluate the worth of your client's cooperation and will advise the sentencing judge accordingly. (Excerpt of Record, Volume 1, at 8.)
 
 
 8
 Because the government concluded that the information provided by Lopez-Yanez at five debriefings was unhelpful, it refused to move for a downward departure from the Sentencing Guidelines.
 
 
 9
 On September 15, 1992, Lopez-Yanez moved to withdraw his guilty plea. The district court held three hearings to determine whether the government complied with the plea agreement. At an evidentiary hearing conducted to review Lopez-Yanez's cooperation, the court heard testimony from two government witnesses, Potter and Tevel Holeman, an agent with the Drug Enforcement Agency. Both said that Lopez-Yanez failed to provide specific, reliable, or consistent information, thus preventing any fruitful investigation. At the sentencing hearing, the court found that the government did not act in bad faith in not moving for a downward departure and did not violate the plea agreement. Accordingly, the court refused to order the government to move for a downward departure or to order a departure on its own authority under U.S.S.G. Sec. 5K2.0. On January 14, 1993, Lopez-Yanez was sentenced to 210 months imprisonment followed by five years of supervised release and assessed a $1,000 fine and a penalty assessment of $50.
 
 II.
 DISCUSSION
 A. The Guilty Plea
 
 10
 Lopez-Yanez contends that his plea was involuntary and lacked a factual basis.
 
 
 11
 1. First, he claims that he misunderstood the terms of the plea agreement. Specifically, he points to an exchange between the judge and his attorney at his plea proceeding in which his attorney indicated that, pursuant to a discussion with the prosecutor, Lopez-Yanez would be entitled to a good-faith hearing if the government did not move for a downward departure under the Sentencing Guidelines.
 
 
 12
 Although the district court explained during the proceeding that nothing in the plea or cooperation agreements required a good-faith hearing, Lopez-Yanez argues that its failure to address him directly on this issue made his plea involuntary because the court failed to insure that he understood the plea bargain's terms.
 
 
 13
 We review the district court's denial of Lopez-Yanez's motion to withdraw his guilty plea for abuse of discretion, United States v. Oliveros-Orosco, 942 F.2d 644, 645-46 (9th Cir.1991), but we review de novo the court's determination that his plea was voluntary. United States v. Anderson, 993 F.2d 1435, 1437 (9th Cir.1993). A district court must adhere to procedures set out in Federal Rule of Criminal Procedure 11 before accepting a guilty plea. We look only to the record of the plea proceeding in determining whether Rule 11 was satisfied. United States v. Bruce, 976 F.2d 552, 559 (9th Cir.1992). A review of the hearing reveals the district court's efforts in explaining to Lopez-Yanez his rights, the consequences of pleading guilty, the crime to which he was pleading, and possible penalties. The court reviewed the terms of the plea and cooperation agreements in detail and corrected Lopez-Yanez's counsel when she misconstrued the cooperation agreement as providing for a good-faith hearing.[1] It made sure that Lopez-Yanez understood everything discussed during the plea proceeding. We find no Rule 11 violation here.
 
 
 14
 2. Lopez-Yanez also asserts a Rule 11 violation on the ground that the district court failed to establish a sufficient factual basis for his plea. See Fed.R.Crim.P. 11(f). Our review of the record reveals no deficiency. Possession of methamphetamine with intent to distribute, to which Lopez-Yanez pleaded guilty, can be established by either actual or constructive possession. See United States v. Medrano, 5 F.3d 1214, 1217-18 (9th Cir.1993). The person who holds the key to a vehicle constructively possesses the contents of that vehicle. Id. at 1218.
 
 
 15
 At the plea hearing, Lopez-Yanez said that he "had the keys for the car that contained" the drugs. He also admitted that he knew the car contained methamphetamine and that he planned to deliver the drugs to his friend. These statements provided the district court sufficient information to conclude there was a factual basis for the plea.
 
 
 16
 3. Lopez-Yanez additionally argues that his plea was involuntary because the district court acted with impatience at the plea proceeding which may have pressured him into entering his plea to avoid a trial, scheduled six days from then. Because Lopez-Yanez raises this issue for the first time on appeal, we review for plain error. See United States v. Dischner, 974 F.2d 1502, 1515 (9th Cir.1992), cert. denied, 113 S.Ct. 1290 (1993); see also Fed.R.Crim.P. 52(b).
 
 
 17
 Judicial misconduct at a plea proceeding may constitute plain error. Anderson, 993 F.2d at 1437-38. However, the plea hearing transcript reveals no misconduct. The statements challenged by Lopez-Yanez[2] were a response to his attorney's attempt to introduce terms that were not included in the actual agreement. Therefore, we find no plain error.
 
 
 18
 4. Lopez-Yanez further challenges the voluntariness of his plea on the ground that his attorney misled him at the plea proceeding into believing that a good-faith hearing would be held if the government did not file a U.S.S.G. Sec. 5K1.1 motion for downward departure.[3] A defendant who pleads guilty on his counsel's advice may attack the voluntariness of his plea on the basis of counsel's incompetence. Tollett v. Henderson, 411 U.S. 258, 267 (1973). To do so he must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) he was prejudiced by the inadequate representation. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984).
 
 
 19
 Even assuming that Lopez-Yanez's attorney's in-court remarks about her discussion with the prosecutor met the first prong of this test, they do not satisfy the second prong. In light of the Rule 11 inquiry by the district court, there is no reasonable possibility that her statements caused Lopez-Yanez to plead guilty. Accordingly, we agree with the district court that the plea was voluntary.
 
 B. The Plea Agreement
 
 20
 Lopez-Yanez contends that the government breached the plea agreement by failing to evaluate his attempted cooperation in good faith. We review de novo the district court's decision whether the government breached a plea agreement. United States v. Fisch, 863 F.2d 690, 690 (9th Cir.1988). A plea agreement is a contract. United States v. Anderson, 970 F.2d 602, 606 (9th Cir.1992). "[W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Santobello v. New York, 404 U.S. 257, 262 (1971). Here, the plea and cooperation agreements are unambiguous. The government promsied to consider moving for a downward departure from the Sentencing Guidelines based on a good-faith evaluation of Lopez-Yanez's cooperation if he pleaded guilty.
 
 
 21
 We conclude that the government fulfilled its promise. According to the prosecutor's testimony at the sentencing hearing, Lopez-Yanez participated in five government debriefings, none of which proved beneficial. He provided incomplete and contradictory information, remembered few details, and lied on numerous occasions. Then, at an evidentiary hearing concerning the government's evaluation of Lopez-Yanez's cooperation, Agent Potter, who attended four debriefings, testified that Lopez-Yanez seemed to be withholding information and that his information was of "no real investigative value." Consequently, the government was not obligated to move for a downward departure under the plea agreement.[4]
 
 C. Jencks Act Claim
 
 22
 Lopez-Yanez contends that the district court violated the Jencks Act, 18 U.S.C. Sec. 3500, by refusing to order government witness Holeman to produce his debriefing notes. Lopez-Yanez asserts that the undisclosed notes, which contained information not included in Holeman's reports, would have shown that the government acted in bad faith by failing to investigate the information he provided.
 
 
 23
 Under the Jencks Act, the government must produce any witness's statement in its possession that relates to the testimony given. 18 U.S.C. Sec. 3500(c); United States v. Boshell, 952 F.2d 1101, 1104 (9th Cir.1991). The Act applies to writings that are either signed or adopted by a witness or are verbatim recitals of a witness's oral statements. 18 U.S.C. Sec. 3500(e). A district court's refusal to order production of a witness's statement pursuant to the Jencks Act is reviewed for abuse of discretion. Boshell, 952 F.2d at 1104.
 
 
 24
 Holeman's debriefing notes do not qualify as a witness statement. They were taken to remind Holeman of what Lopez-Yanez said during debriefings. Lopez-Yanez, however, was not a witness at the proceeding, and even if he had been, he did not adopt the notes, nor were they verbatim transcriptions of his statements. Although Holeman was a government witness, his notes were not his own statement. Consequently, the district court did not abuse its discretion in declining to order the production of Holeman's notes.
 
 D. The Sentence
 
 25
 Lopez-Yanez argues that after the government refused to file a motion for downward departure, the district court should have departed downward on its own motion under U.S.S.G. Sec. 5K2.0[5] on the basis of his "cooperation gone sour." He asserts that a defendant's attempted cooperation should lead to a downward departure under Sec. 5K2.0 even though Sec. 5K1.1 provides for departure if a defendant has substantially assisted the government.
 
 
 26
 Although a district court's discretionary refusal to depart downward from the Sentencing Guidelines is not reviewable on appeal, United States v. Morales, 972 F.2d 1007, 1011 (9th Cir.1992), cert. denied, 113 S.Ct. 1665 (1993), its belief that it lacks the legal authority to depart is subject to review. See United States v. Mena, 925 F.2d 354, 355 (9th Cir.1991). We review de novo the district court's determination that it lacked discretion to depart. United States v. Reyes-Alvarado, 963 F.2d 1184, 1189 (9th Cir.), cert. denied, 113 S.Ct. 258 (1992). Here, the district court refused to depart downward under Sec. 5K2.0 on the basis of Lopez-Yanez's "cooperation gone sour" because it interpreted Sec. 5K1.1 as precluding such a departure. Thus, we have jurisdiction.
 
 
 27
 A district court may not depart from the Guidelines under Sec. 5K2.0 unless it identifies an aggravating or mitigating circumstance that the Commission failed to adequately consider when formulating the Guidelines. U.S.S.G. Sec. 5K2.0. "[C]ooperation with the government, regardless of whether the goevernment in its discretion moves for a downward departure, is a circumstance that has been adequately taken into account by the Sentencing Commission." United States v. Goroza, 941 F.2d 905, 909 (9th Cir.1991). Provided the government does not act unconstitutionally in exercising its discretion under Sec. 5K1.1, the court may not depart downward under Sec. 5K2.0 in exchange for a defendant's cooperation. Id.
 
 
 28
 Here, the district court found that the government did not act in bad faith in refusing to file a Sec. 5K1.1 motion. Nothing indicates that the government reached this decision unconstitutionally. Consequently, the court lacked legal authority to issue a downward departure under Sec. 5K2.0, and we affirm Lopez-Yanez's conviction and sentence under the Guidelines.
 
 AFFIRMED
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The court explained that the agreement provided "that the Government will, in good faith, evaluate the worth of your client's cooperation and will advise the sentencing judge accordingly."
 
 
 [2]
 "We need to agree to these terms of the plea agreement--nothing extraneous. If there's nothing extraneous, we're going to go to trial on Tuesday." (Excerpt of Record, Volume 2, at 12.)
 
 
 [3]
 Section 5K1.1 states:
 Upon motion of the government stating that the defendant had provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.
 U.S.S.G. Sec. 5K1.1.
 
 
 [4]
 Finally, Lopez-Yanez's argument that the government's bad faith was evident in its refusal to consider his proffer letters submitted two days before sentencing is without merit. The government reviewed the proffer letters and was questioned about their content at the sentencing hearing. The district court held that the government did not act in bad faith in evaluating those letters for Lopez-Yanez's cooperation. In fact, the court found that the letters were contradictory and did not reflect substantial cooperation. Thus, there were inconsistencies up to the sentencing date
 
 
 [5]
 This section provides in part:
 [T]he sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."
 U.S.S.G. Sec. 5K2.0