UNITED STATES COURT OF APPEALS

FIFTH CIRCUIT

No. 94-10052

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

CHARLES R. CROWELL,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas

(July 25, 1995)

Before REYNALDO G. GARZA, HIGGINBOTHAM, and PARKER, Circuit Judges.

ROBERT M. PARKER, Circuit Judge:

The defendant, Charles R. Crowell, was tried before a jury and convicted on all 23 counts of a superseding indictment related to a fraudulent investment scheme that spanned more than 5 years and affected more than 160 victims. Crowell appeals the district court's rejection of two negotiated plea agreements and the sentence the district court imposed. Since we find that the district court participated in plea discussions in violation of Federal Rule of Criminal Procedure 11 (e)(1), but find that the defendant received a fair trial, we affirm Crowell's conviction, vacate his sentence, and remand for resentencing.

## I. FACTS

Crowell was the president and chief operating officer of Abacus and Associates, Inc. Abacus was in the business of preparing income tax returns and providing related bookkeeping services. In addition, Abacus held itself out as a manager of investments. Beginning sometime in 1979, Crowell, through Abacus, established the Abacus Retirement Management Trust, with Crowell as Trustee. Crowell directed Abacus employees to identify potential investment clients through their income tax returns. When potential investors were identified, Crowell would convince them to put their money into IRA accounts, pension plans, and other investments that he purported to manage through Abacus Retirement Management Trust.

Crowell represented to potential investors and clients that their money would be invested in first lien mortgage notes, municipal leases, church bonds, municipal bonds, and "safe" stocks. What Crowell failed to tell investors and clients is that instead of investing their money as he represented, he diverted, through various bank accounts, much of the money for his own business and personal use, including payroll, the purchase of personal property, concrete for a swimming pool, utilities, cattle, credit card charges, and legal fees not related to trust business. Crowell periodically mailed fraudulent Statements of Account to his investors, which indicated that their investments were doing well and that the funds were readily available. In addition, at times Crowell used new investor deposits to cover other investor's

2

withdrawals, preventing exposure of his fraudulent practices. As a result of his fraudulent investment scheme, Crowell deprived more than 160 victims of savings and retirement funds in the amount of $1,818,668.77.

On August 11, 1992, Crowell was charged in a three-count indictment with interstate transportation of money obtained by fraud in violation of 18 U.S.C. § 2314, fraudulent sale of a security as part of a pension plan in violation of 15 U.S.C. § 77q, and conducting a financial transaction in proceeds of the interstate transportation of money obtained by fraud in violation of 18 U.S.C. § 1956(a)(1). All three charges related to transactions that took place in August of 1987.

On November 6, 1992, pursuant to a plea agreement with the government, Crowell pled guilty to Count 2 of the indictment. The agreement provided that the other charges would be dropped and that Crowell would make restitution to the victims through the sale of property he owned, including land in Keller, Texas. The district court accepted Crowell's guilty plea subject to a later determination on whether to accept the plea agreement.

After reviewing the plea agreement and presentence investigation report, the district court expressed concern regarding the sentence allowable under the agreement. The charge to which Crowell pled guilty would allow a maximum term of imprisonment of five years, which was too light a sentence, in the district court's opinion, considering the defendant's conduct. The district court indicated, however, that if significant restitution

3

could be made under the agreement through the sale of the defendant's property, then the overall effect of the agreement would be acceptable. Defense counsel agreed that the plea agreement contemplated significant restitution to the victims, not just a "pie in the sky" promise.

Further investigation revealed that Crowell's property was encumbered by multiple liens, including private security interests and tax liens, and that it was the subject of adversary proceedings in bankruptcy. The district court held multiple conferences with counsel in an effort to determine the value of defendant's property that would be available for restitution. In addition, the district court monitored proceedings in the bankruptcy court for any sign that the property would be available. Finally, in May of 1993, the court determined that significant restitution would not be available despite the efforts of the court and counsel. The district court also decided that absent the actual ability to provide the restitution contemplated by the agreement, the sentence allowable under the plea agreement would not adequately reflect the aggravated nature of Crowell's conduct or the harm to Crowell's victims. Thus, the district court rejected the plea agreement, and Crowell withdrew his guilty plea. The court entered a Memorandum Opinion and Order reflecting this decision on May 25, 1993. Trial was scheduled for June 1, 1993.

Following the rejection of this plea agreement, the government moved for a continuance to allow additional charges to be presented to the grand jury. This motion was granted, and on June 17, 1993,

4

Crowell was charged in a superseding indictment with interstate transportation of money obtained by fraud in violation of 18 U.S.C. § 2314, 20 counts of mail fraud in violation of 18 U.S.C. § 1341, and two counts of engaging in monetary transactions in property derived from mail fraud in violation of 18 U.S.C. § 1957.

On July 19, 1993, the parties reached a tentative agreement for defendant's plea of guilty to two counts of mail fraud under the superseding indictment. Before the agreement was in final form, and before the factual resume had been prepared, the parties decided to contact the district court to inquire in advance whether the court anticipated any problems with the plea agreement.[1] The court first, correctly, stated that it would have to see the plea agreement and factual resume prior to making that determination. The court continued, however, saying

> My concern before, as I indicated, was I didn't think
> that the sentence that could be imposed under the prior
> plea agreement adequately addressed the defendant's
> criminal conduct as contemplated -- and that I didn't
> have any choice but to reject it under the policy
> statement of the guidelines that governs what we'll do
> when we are presented with a plea agreement.
>     I felt that a sentence significantly in excess of
> what he likely would serve under the prior plea of guilty
> and plea agreement would be required for the sentence to
> adequately address his criminal conduct.[2]

Later that day, the parties submitted the completed plea agreement

[1] We note that clearly this is an inappropriate procedure. Counsel should not have asked the court to give any opinion on the proposed plea agreement until it had had an opportunity to review the agreement in its entirety. To the extent we find that the district court improperly participated in the plea discussions, we also find that this error was invited by counsel's improper inquiry.

[2] Supp. Rec. on Appeal, Vol. 8, p.5 (July 19, 1993).

5

and factual resume for the district court's review.

On July 20, 1993, pursuant to the second plea agreement, Crowell pled guilty to two counts of mail fraud. The district court again accepted the defendant's guilty plea and deferred its decision on whether to accept the plea agreement. Because the mail fraud counts to which Crowell pled guilty were based on conduct after November 1, 1987, the court reviewed the plea agreement under Section 6B1.2 of the Federal Sentencing Guidelines. The district court determined that the likely guideline sentencing range, 37-46 months, would not adequately reflect the seriousness of Crowell's actual offense behavior and that the agreement would undermine the statutory purposes of sentencing. Thus, the district court rejected the second plea agreement as well. Crowell again withdrew his guilty pleas.

On July 26 and 27, 1993, Crowell was tried before a jury and found guilty on all 23 counts of the superseding indictment. On January 5, 1994, the district court held a sentencing hearing and Sentenced Crowell to imprisonment for 60 months on each count 2 through 10, concurrently; 60 months on each count 11 through 21, concurrently, but consecutive to the sentences imposed on counts 2 through 10; 120 months on counts 22 and 23, concurrently, and concurrent to the sentences imposed on counts 2 through 21; and 10 years on count 1 (a pre-guidelines offense) to run consecutive to the sentences imposed on counts 2 through 23. In addition, the district court ordered $1,818,668.77 in restitution, as well as a special assessment and a three-year term of supervised release

6

following imprisonment.  This appeal followed.

## II. DISCUSSION

On appeal, Crowell argues (1) that the district court improperly participated in plea negotiations in violation of Federal Rule of Criminal Procedure 11(e)(1), (2) that the district court abused its discretion in rejecting the proposed plea agreements, (3) that Crowell was denied a fair trial by being required to make certain admissions at a plea hearing before the district court decided to reject the negotiated plea agreement, (4) that the district court erroneously calculated Crowell's total offense level under the sentencing guidelines, and (5) that the district court's upward departure from the guidelines was unwarranted and unreasonable when imposed in addition to a consecutive sentence on the pre-guidelines offense.

Crowell's first contention is that the district court participated in the plea discussions in violation of Federal Rule of Criminal Procedure 11(e)(1).  Rule 11(e)(1) provides that the attorney for the government and the attorney for the defendant, or the defendant himself when acting pro se, may engage in discussions with a view toward reaching a plea agreement.  Relevant to this appeal, the rule also provides that "[t]he court shall not participate in any such discussions."  We have previously recognized that this rule "prohibits absolutely a district court from `all forms of judicial participation in or interference with

7

the plea negotiation process.'"[3] We have also noted, however, that a district court must actively participate in the discussions that occur after a plea agreement is disclosed.

> In fact, Rule 11 mandates it, to include: "addressing the defendant personally in open court" to ensure "that the plea is voluntary and not the result of force or threats or promises apart from a plea agreement", Rule 11(d); inquiring "as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or the defendant's attorney", *id.*; "making such inquiry as shall satisfy it that there is a factual basis for the plea", Rule 11(f); and either accepting or rejecting the plea agreement and stating the reasons for doing so, *see* Rule 11(e)(3).[4]

In *United States v. Miles*, we held that although the district court may state its reasons for rejecting a plea agreement, it may not also suggest the plea agreements that would be acceptable. When a court goes beyond providing reasons for rejecting the agreement presented and comments on the hypothetical agreements it would or would not accept, it crosses over the line established by Rule 11 and becomes involved in the negotiations.[5]  In *Miles*, we held that the district court crossed that line.  Crowell asks us to find a similar violation here.

The defendant points to comments made by the district judge after the first plea agreement was presented and before the court determined that it had to be rejected.  In evaluating the first

---

3.  *United States v. Miles*, 10 F.3d 1135, 1139 (5th Cir. 1993) (quoting *United States v. Adams*, 634 F.2d 830, 835 (5th Cir. Unit A Jan. 1981)).

4.  *Miles*, 10 F.3d at 1140.

5.  *Id.* at 1139-40.

agreement, the district court compared the possible sentence under the agreement to the potential sentence if the defendant were convicted on all counts of the indictment.  On February 11, 1993, in performing that comparison, the court noted that if Crowell were convicted on all counts he "probably would end up with [a sentence] of 15 or 20 years."[6]  Crowell argues that it was the court's comments in this regard that the parties were attempting to address in reaching the subsequent plea agreement, and that this indirect influence constitutes the type of judicial participation in plea discussions that is prohibited by Rule 11(e)(1).  This argument must fail.

The commentary to Rule 11 and our previous decisions make it clear that the district court is expected to take an active role in evaluating a plea agreement, once it is disclosed.[7]  We have no doubt that this evaluation may include a consideration of the punishment allowable under the agreement, as compared to the punishment appropriate for the defendant's conduct as a whole. Therefore, any such comments made during a discussion of the effects of a plea agreement properly presented to the court do not constitute improper participation in violation of Rule 11.

The comments made by the court on February 11, 1993, were made in the context of an evaluation of the first plea agreement properly presented by the parties.  We note that at that time the district court was three months away from a final determination

---

6.  Supp. Rec. on Appeal, Vol. 4, p. 3 (Feb. 11, 1993).

7.  *See Miles*, 10 F.3d at 1140.

9

that the first plea agreement was unacceptable. We also note that clearly the comments were not intended to suggest a sentencing range that would be acceptable in a subsequent plea agreement. That the parties called on the court's earlier comments in fashioning the second plea agreement cannot be determinative. The proper inquiry is whether the district court was actively evaluating a plea agreement, as the court is required to do, or whether the court is suggesting an appropriate accommodation for a subsequent plea agreement, something this Court found prohibited in *Miles*. The district court's comment's on February 11 must fall into the former category.

However, on July 19, 1993, after the rejection of the first plea agreement, and before the second plea agreement was in its final form, the district court had another discussion with counsel regarding the range of punishment that would be required. The court's comments, quoted above, indicate the court's feeling that a penalty significantly more severe than that allowed under the first plea agreement would be necessary for an agreement to be acceptable. The fact that this comment was injected into the discussions while the parties were still preparing the second agreement is critical. It is precisely this type of participation that is prohibited by Rule 11. Although not as blatant as the suggestion of particular terms of imprisonment in *Miles*, we find that the court's comments on July 19 constituted a violation of Rule 11.

Finding a violation of this rule does not end our inquiry,

10

however. Recently, this Court held that a violation of Rule 11 would never require automatic reversal or vacatur. Rather, "when an appellant claims that a district court has failed to comply with Rule 11, we shall conduct a straightforward, two-question `harmless error' analysis: (1) Did the sentencing court in fact vary from the procedures required by Rule 11, and (2) if so, did such variance affect substantial rights of the defendant?"[8] Having answered the first question, we must proceed to the second.[9]

In a case where the defendant was convicted by guilty plea pursuant to an agreement, we would "examine the facts and circumstances of the . . . case to see if the district court's flawed compliance with . . . Rule 11 . . . may reasonably be viewed as having been a material factor affecting [defendant]'s decision to plead guilty."[10] The focus of our inquiry must necessarily be different where a plea agreement was rejected, the defendant pled not guilty, and was convicted after a full trial. To determine

---

8. *United States v. Johnson*, 1 F.3d 296, 298 (5th Cir. 1993). Fed. R. Crim. P. 11(h) provides "[a]ny variance from the procedures required by this rule which does not affect substantial rights shall be disregarded."

9. Although the government did not argue that any error was harmless, we proceed with our analysis because "harmless error" is the appropriate standard of review. "If neither party suggests the appropriate standard, the reviewing court must determine the proper standard on its own." *United States v. Vonsteen*, 950 F.2d 1086, 1091 (5th Cir.) (en banc), *cert. denied*, 112 S. Ct. 3039 (1992). *See also Lufkins v. Leapley*, 965 F.2d 1477, 1481-82 (8th Cir.) (appellate court may raise harmless error analysis sua sponte in certain circumstances), *cert. denied*, 113 S. Ct. 271 (1992).

10. *Johnson*, 1 F.3d at 302 (quoting *United States v. Bachynsky*, 934 F.2d 1349, 1360 (5th Cir.) (en banc), *cert. denied*, 502 U.S. 951 (1991)).

11

whether substantial rights were affected in this case, we must examine whether the district court's participation might reasonably be said to have affected the court's impartiality in the conduct of the trial or sentencing.[11]

After he withdrew his guilty plea, Crowell was tried before a jury. He does not challenge on appeal the sufficiency of the evidence, trial procedure, evidence rulings, jury instructions, or anything else relating to the conduct of the trial. In addition, the court's improper comments related solely to the level of punishment necessary for an acceptable plea agreement; they did not reflect the court's view on the strength or weakness of the evidence in the case or the government's ability to prove the necessary elements of any particular charge. Thus, the court's participation in the plea discussions, limited as it was, cannot reasonably be said to have affected the court's ability to impartially conduct the trial of this case. Since Crowell ultimately entered a plea of not guilty, and since there is no indication in the record that Crowell did not receive a fair trial, we have no problem finding that the court's violation of Rule 11 was harmless with regard to Crowell's conviction.

However, we cannot say that the district court's participation

---

11. *See United States v. Adams*, 634 F.2d 830, 841-42 (5th Cir. Unit A Jan. 1981) ("Rule 11(e)(1)'s ban on judicial participation in plea discussions does serve important prophylactic purposes even in cases in which the defendant pleads not guilty: it helps to insure that the trial judge is impartial throughout the defendant's trial and sentencing, and avoids the dangers implicit in the court's misrepresentation of its role in plea negotiations.").

in the plea discussions was harmless with regard to Crowell's sentencing. With regard to the sentencing, there is no intervening jury deliberation to satisfy us that the error was harmless. Instead, the sentencing determination was made by the same judge who had become involved in the plea discussions. One of the main purposes of the rule against judicial involvement in plea discussions is that "such involvement `is likely to impair the trial court's impartiality.'"[12]

In this case, the district court's comments suggested, at the very least, that it felt a sentence significantly more severe than a five year pre-guidelines sentence would be required to make a plea agreement acceptable. Although the second plea agreement was rejected, the district court had to address the appropriate level of punishment again at sentencing. The court's earlier comments, however, create the appearance of a premature commitment to a sentence of at least a certain level of severity.

Given the potential effect the district court's improper comments had on its duties at sentencing, in the absence of any suggestion of harmless error by the government, we must find that substantial rights of the defendant were affected. Therefore, we cannot find the court's violation of Rule 11 harmless with regard to Crowell's sentencing. We cannot conclude our discussion, however, without addressing Crowell's other argument's relevant to his conviction.

Crowell contends that the district court abused its discretion

---

12. *Miles*, 10 F.3d at 1139 (quoting *Adams*, 634 F.2d at 840).

in rejecting the second plea agreement. A district court's rejection of a plea agreement is reviewed only for abuse of discretion.[13] A court may properly reject a plea agreement based on undue leniency.[14] In addition, section 6B1.2 of the sentencing guidelines provides that a court may accept such an agreement "if the court determines . . . that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines."[15] The district court made the determination, on the record, that a plea of guilty to two counts of mail fraud with a likely sentencing guideline range of 37-46 months would not meet that standard. Given the large number of victims and the protracted course of fraudulent activity, we cannot find that the district court abused its discretion in this determination.

Crowell also contends that the district court prejudiced his right to a fair trial by conducting a plea hearing prior to rejecting the second proposed plea agreement. In conducting the plea hearing, the district court explored the factual basis for the plea by addressing the defendant personally, as required by Rule 11

---

13. *United States v. Foy*, 28 F.3d 464, 472 (5th Cir.), *cert. denied*, 115 S. Ct. 610 (1994).

14. *Id.* (citing *United States v. Bean*, 564 F.2d 700, 704 (5th Cir. 1977)).

15. U.S.S.G. § 6B1.2(a) (1994). The same language is found in the 1992 edition which was used in this case.

of the Federal Rules of Criminal Procedure.[16] Prior to questioning the defendant, the district court asked Mr. Crowell "Do you understand that you are now under oath and that if you answer any of my questions falsely your answers may later be used against you in a prosecution for perjury or giving a false statement?" Crowell responded "Yes, sir."

Crowell argues that his confirmations under oath at the plea hearing unjustly prevented him from testifying in his own defense. Crowell does not explain how his previous admissions would have prejudiced him if he had testified except to say that it would have been like walking through a minefield. Rule 11(e)(6) of the Federal Rules of Criminal Procedure precluded the use of any such statements against Crowell in his criminal prosecution and would have prevented the use of the same statements for impeachment purposes had he testified.[17] The rule does allow the use of such

---

16. *See* Fed. R. Crim. P. 11(c), (f).

17. Fed. R. Crim. P. 11 (e)(6) provides

Except as otherwise provided in this paragraph, evidence of the following is not, in any civil or criminal proceeding, admissible against the defendant who made the plea or was a participant in the plea discussions:
    (A) a plea of guilty which was later withdrawn;
    (B) a plea of nolo contendere;
    (C) any statement made in the course of any proceedings under this rule regarding either of the foregoing pleas; or
    (D) any statement made in the course of plea discussions with an attorney for the government which do not result in a plea of guilty or which result in a plea of guilty later withdrawn.
However, such a statement is admissible (i) in any proceeding wherein another statement made in the course of the same plea or plea discussions has been introduced and the statement ought in fairness be considered

15

statements under certain circumstances in criminal proceedings for perjury or false statement. However, to the extent this use was a possibility, Crowell received a full warning prior to being asked any questions. Moreover, the provision for use of a defendant's statements in subsequent prosecutions for perjury or false statement is an important check on the defendant's veracity under oath, which is necessary to protect the integrity of the judicial process. There was nothing improper in the procedure followed by the district court at Crowell's plea hearing, and thus the procedure cannot be said to have deprived him of a fair trial.

## III. CONCLUSION

Since the district court's participation in the plea discussions did not have any prejudicial effect on Crowell's conviction, and because Crowell's other arguments relevant to his conviction are without merit, the conviction must be AFFIRMED. However, because the court's participation in the plea discussions cannot be said to have been harmless with regard to Crowell's sentence, the sentence must be VACATED.[18] For the foregoing reasons, this case is REMANDED for assignment to a different district judge for resentencing.

---

contemporaneously with it, or (ii) in a criminal proceeding for perjury or false statement if the statement was made by the defendant under oath, on the record, and in the presence of counsel.

18. Because of our disposition, we need not address the appellant's arguments regarding sentencing.