**UNITED STATES of America**

v.

**Dwight D. YORK, a/k/a Malakai Z. York, Isa Muhammad, and Isa Alihad Mahdi, Defendant.**

**No. 5:02–CR–27(HL).**

United States District Court, M.D. Georgia, Macon Division.

July 18, 2003.

Edward T.M. Garland, Mr., Atlanta, Frank A. Rubino, Coconut Grove, FL, for Dwight D. York aka Malakai Z. York aka Isa Muhammad aka Isa Alihad Mahdi aka Baba, defendant.

Richard S. Moultrie, Jr., Mr., Macon, Stephanie Thacker, Washington, DC, for U.S. Attorneys.

LAWSON, District Judge.

Defendant Dwight D. York's Motion to Recuse Trial Judge [Tab 119] is before the Court. A hearing on the Motion was held July 10, 2003. After consideration of the briefs and arguments of counsel, the Court grants the Motion, as more fully set forth below.

On May 28, 2003, the undersigned judge met with counsel for the Government and counsel for Defendant for the purpose of advising them that the Court had decided to reject the plea agreement previously negotiated by the Government and the Defendant. The Court explained that after consideration of, among other things, the pre-sentence report, the Court had come to the conclusion that the 15–year sentence to be imposed under the plea agreement was too lenient. After efforts by all counsel to persuade the Court to reconsider were unsuccessful, counsel for the Government suggested to the Court that the Government might move to dismiss all counts of the indictment except Count One, which would have the effect of reducing the sentencing guideline range to coincide with the 15–year sentence stipulated by the plea agreement. The Court advised all counsel that such a motion would not be granted if presented to the Court. The parties then left the chambers of the undersigned, but returned a short time later. On the return visit, counsel for Defendant, apparently speaking on behalf of both the Government and the Defendant, asked the Court what sentence might be acceptable.

After reminding the parties that the Court could not engage in plea negotiations, and after cautioning the parties that its response was not to be construed as participation in plea bargaining, the Court indicated that a sentence of 20 years might be acceptable.[1] Defendant has now filed a motion to recuse, contending that the comments of the Court during the foregoing conversations demand that the undersigned remove himself from this case.

Rule 11 of the Federal Rules of Criminal Procedure sets forth the procedures for plea agreements, generally providing that a defendant's attorney and an attorney for the government may discuss and reach a plea agreement. Fed.R.Crim.P. 11(c)(1). The Rule further provides as follows: "The court must not participate in these discussions." Fed.R.Crim.P. 11(c)(1).[2] Rule 11 does not otherwise address what constitutes participation by the Court, nor does it specify the procedure to be followed in the event that a party maintains that participation in violation of the Rule has occurred. However, the former Fifth Circuit has held that the Rule "has been interpreted as an absolute prohibition on all forms of judicial participation in or interference with the plea negotiation process." *United States v. Adams*, 634 F.2d 830, 835 (5th Cir. Unit A Jan.19, 1981).[3]

In *Adams*, an Assistant United States Attorney and the attorney for the defendant discussed the possibility of a plea bargain. Before a plea agreement was reached, however, counsel met in chambers with the judge to whom the case had been assigned. The judge indicated in discussions that she would be willing to consider a sentence of probation. After reviewing the presentence report, however, the court concluded that probation would not be appropriate. When the defendant then expressed a desire to plead not guilty, the trial court advised the defendant that if he were to plead to two counts, he would be sentenced to four years on one count and probation on the other. The defendant rejected the court's offer and proceeded to trial. He was subsequently found guilty of violation of three counts and sentenced to serve consecutive four year prison terms on each count. The defendant appealed his conviction.

On appeal, the Fifth Circuit raised sua sponte the issue of whether the judge's participation in the plea discussions constituted an error in the proceedings. The appellate court found that the trial court's participation in the discussions concerning the defendant's plea constituted plain error, although the court did note that there was no showing of actual prejudice at defendant's trial or sentencing. The court further found that the appropriate remedy for the trial court's error was to reverse the sentence imposed by the district court

---

**1.** A more detailed statement of the events that occurred in chambers, as found by the Court, is set forth in the Court's Order dated July 10, 2003.

**2.** Rule 11(c) was previously codified at Rule 11(e). The 2002 Amendments to the Federal Rules of Criminal Procedure, which became effective December 1, 2002, amended and reorganized Rule 11, so that Rule 11(e) is now at 11(c). That portion of Rule 11(e) directing that the court shall not participate in discussions between the parties concerning plea agreements remained substantially the same after the amendment became effective.

**3.** Decisions of the United States Court of Appeals for the Fifth Circuit, handed down prior to the close of business on September 30, 1981, are binding as precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981). *See also Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982) (holding that Unit A en banc decisions and Unit A panel ·decisions after October 1, 1981, are not binding precedent in the Eleventh Circuit).

and remand the case for reassignment to a new judge for determination of sentence.

Although the facts of this case differ markedly from those in *Adams,* the concerns expressed by the Fifth Circuit in reaching its result are pertinent. In *Adams,* the court noted a court's participation in plea negotiations may exert "subtle pressures" on a defendant to accept the opportunity offered and that the defendant's refusal may cause the judge to resent the defendant who rejects the opportunity. *Adams,* 634 F.2d at 840. The court also observed that a converse result might occur, in that "some defendants may be led to believe, as a result of judicial statements suggesting or approving a particular bargain, that they are entitled to a particular deal despite the fact that the prosecutor has not agreed to the bargain or the court has not formally accepted it." *Id.* at 841.

The concerns expressed by the former Fifth Circuit in *Adams* have also been acknowledged by other circuit courts and in cases in which the factual circumstances more closely parallel those at issue here. Thus, in *United States v. Crowell,* 60 F.3d 199 (5th Cir.1995), the defendant's sentence was vacated and the case remanded for resentencing by another judge because the appellate court found that the district court judge improperly participated in plea negotiations. In *Crowell,* the district court rejected a plea agreement reached between the government and the defendant because the sentence was too light. The attorneys for the government and the defendant then reached a new, tentative plea agreement. Before the agreement was put in final form and formally presented to the judge, the parties contacted the judge to see if he had concerns about the agreement. The judge noted that he would have to see the plea agreement before making a determination but then added that a significant sentence would have to

be imposed to adequately address the defendant's criminal conduct. The district court later rejected the second plea agreement that was presented to him.

In deciding that the district court had improperly participated in plea negotiations, the Fifth Circuit focused on the comments made by the district judge after the first plea agreement had been rejected and before the second plea agreement was finalized. The appellate court noted,

> The [district] court's comments ... indicate the court's feeling that a penalty significantly more severe than that allowed under the first plea agreement would be necessary for an agreement to be acceptable. The fact that this comment was injected into the discussions while the parties were still preparing the second agreement is critical. It is precisely this type of participation that is prohibited by Rule 11.... [W]e find the court's comments ... constituted a violation of Rule 11.

*Crowell,* 60 F.3d at 204. The appellate court noted that by asking the trial court to comment on the proposed plea agreement, counsel for the government and the defendant acted inappropriately and added that the error "was invited by counsel's improper inquiry." *Id.,* at 202 n. 1. Nevertheless, the court concluded that the error by the district court could not be deemed harmless. *Id.* at 206–07.

The Seventh Circuit reached a similar conclusion in *United States v. Kraus,* 137 F.3d 447 (7th Cir.1998). In *Kraus,* the parties presented a Rule 11(e)(1)(C) agreement to the judge. The judge rejected the agreement because it was too lenient. The attorney for the government then attempted to ascertain what kind of agreement the court would find to be acceptable. Following an exchange between the court and the attorney for the government, the attorney asked "whether 'there is any possibility of

us reaching an agreement that the court would accept in this case.'" *Id.* at 450. In response to the question, the judge stated,

"I guess your question is whether you can divine what it is that I am going to do. I don't know precisely what I'm going to do, but I am telling you that it wouldn't be one hundred and twenty-one months. So you can either reach another 11(e)(1)(C) agreement, if you are able to, or you can open it up so that the court has some more play for some of these other considerations. I don't know; I will have to hear the parties on all of that. But it would be basically compelled by, if I accepted this agreement, to impose a sentence not greater than one hundred and twenty-one months is a control that I won't yield to."

*Id.* In discussing the exchange between the court and counsel, the Seventh Circuit noted that the government's question "invited the court into the realm of hypothetical agreements from which Rule 11 absolutely bars the district court." *Id.* at 454. The court also noted that it was "not entirely comfortable" with the district court's response and, while recognizing that the court's impact on plea negotiations "was very likely minimal," the court added, "Still, the court's remarks almost surely had the effect of directing the parties toward one set of alternatives to the possible exclusion of others that the parties themselves might have explored." *Id.* at 455.

While noting that a district court may properly comment on its reasons for rejecting a plea agreement, the appellate court emphasized that "the court's authority to comment is confined to an agreement that the parties have themselves finalized and that has been properly put before the court for approval pursuant to the rule." *Id.* at 453. The court also stated, "Once the court has rejected that agreement, its license to speak about what it finds accept-able and unacceptable-to suggest an appropriate sentencing range, for example-is at an end." *Id.* at 454. The court added the following, "As *Crowell* indicates, remarks directed to future or ongoing plea negotiations which suggest what will satisfy the court transform the court from an impartial arbiter to a participant in the plea negotiations." *Id.* at 455 (citing *Crowell,* 60 F.3d at 203, 204).

In *Kraus,* as in *Crowell,* the court noted that the court's statements were elicited as the result of improper inquiry from counsel: "Strictly speaking, Rule 11 prohibited any answer to the prosecutor's inquiry other than an admonition that the question itself was improper." *Id.* at 454. However, the Seventh Circuit did not suggest that the court's comments were any less erroneous because they were improperly elicited. The court did emphasize, however, that it was not reversing the trial court on the basis of its comments alone. In *Kraus,* unlike in *Crowell,* the court noted that it was the judge's comments, coupled with comments made to the government by a member of the judge's staff that tipped the scales toward a reversal. *Id.* at 457. Thus, in *Kraus,* the court left open the question of whether the judge's comments, standing alone, would have warranted vacating the plea. The court, nevertheless, expressed serious concerns about the appropriateness of the district court's remarks.

Like the former Fifth, the Fifth and the Seventh Circuits, the Ninth Circuit has had occasion to consider what actions by a district court have the effect of limiting the plea negotiation process. In *United States v. Anderson,* 993 F.2d 1435 (9th Cir.1993), the defendant and the government entered into a plea agreement which the defendant later rejected. When the defendant appeared before the judge, the judge told the defendant that he would no longer accept a

plea unless it was to all counts of the thirty-count indictment. The court then instructed the government not to make any deals because the court would not honor them. Despite the court's comments, the defendant ultimately pleaded guilty to two counts of the indictment but then sought to have the conviction and sentence set aside, claiming that the plea was coerced. The Ninth Circuit found that the trial court improperly participated in the plea negotiations and vacated the conviction.

In vacating the conviction in *Anderson,* the court explained that "the court's prospective refusal to accept a plea to fewer than the full thirty counts, and direction to the prosecutor not to offer any such deal in the future, usurped the government's role and made the judge a participant in the plea negotiations." *Id.* at 1439. The appellate court considered the district court's comments to be coercive "since they effectively threw the weight of the court behind the prosecution." *Id.* The court acknowledged in *Anderson* that there were other bases for vacating the conviction, including the district court's expressed "general distaste for plea bargaining." *Id.* Nevertheless, the court considered the judge's directions to the government about what charges it could and could not dismiss to be improper participation in the plea negotiation process. *Id.*

Applying the principles set forth in the foregoing cases to the facts of this case, it is clear to the court that recusal is mandated. In its conversations with the attorneys, the Court both indicated a sentence that it would be willing to accept if incorporated in a plea agreement and further expressed its reluctance to approve a government request for dismissal of charges.[4] These comments had the unfortunate consequence of allowing the Court to become a participant in the plea negotiations-a result strictly forbidden by Rule 11(c)(1) and rigidly enforced by the circuit courts. The questions directed to the Court that served to elicit the improper response from the Court were, themselves, improper and thus invited the error. Nevertheless, the circuit courts have not attempted to draw a distinction between invited error and uninvited error in determining whether courts have improperly injected themselves into the plea negotiation process and the Court declines to do so now.

Whether this Court's remarks were invited or uninvited, harmless or prejudicial, there is too much at stake in this case to risk the possibility of error. If this case goes to trial, numerous witnesses will be called upon to testify about traumatic events in their lives and it is important that the Court take what steps it can now to ensure that they are not obliged to have to recount those events a second time because of perceived errors in how the plea negotiations were handled.

In view of the foregoing, therefore, the Court is of the opinion that it should recuse itself from further proceedings in this case. The Defendant's Motion to Recuse is hereby granted. The Clerk of Court is directed to reassign this case and notify all counsel accordingly.

---

4. Rule 48 of the Federal Rules of Criminal Procedure requires leave of court before the government can dismiss an indictment, information, or complaint. Fed.R.Crim.P. 48(a).