**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 5 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

ESTAC L. LOVE, a/k/a Essie Love,

    Defendant-Appellant.

No. 00-5042
(D.C. No. 99-CR-12-B)
(N.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **EBEL** and **BRISCOE**, Circuit Judges, and **BRORBY** , Senior Circuit Judge.

Estac L. Love ("Love") appeals his federal conviction and sentence on fourteen counts of armed robbery, car-jacking and weapons charges. Applying the minimum sentence authorized by statute and the United States Sentencing Guidelines ("the guidelines"), the district court sentenced Love to 146 years in prison. We find that Love is not entitled to relief from his conviction or sentence based upon an alleged violation by the district court of Federal Rule of Criminal Procedure 11(e)(1) because Love has not demonstrated that his substantial rights

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

were affected by the district court's statements. We also find that the large disparity between Love's sentence and the sentences received by his two co-defendants does not violate either the Due Process Clause or the Eighth Amendment. Finally, we reject Love's arguments both that the district court failed to submit all elements of the 18 U.S.C. § 924(c) weapons charges to the jury in violation of Apprendi v. New Jersey, 120 S. Ct. 2348 (2000), and that the Hobbs Act, 18 U.S.C. § 1951, is unconstitutional in light of United States v. Morrison, 120 S. Ct. 1740 (2000). We therefore AFFIRM on all issues.

## BACKGROUND

In 1999, the United States Attorney's Office ("the government") filed a criminal complaint charging Love and Willie Cobb ("Cobb") with three criminal counts: carjacking in violation of 18 U.S.C. § 2119, attempted robbery in violation of 18 U.S.C. §§ 2, 1951, and possessing a firearm during the commission of a crime of violence in violation of 18 U.S.C. § 2, 924(c). The government later obtained a grand jury indictment expanding the charges brought against Love and Cobb to include fourteen counts of criminal activity stemming from a crime spree that Love, Cobb and a third man named Stacy Malone ("Malone") engaged in between December 1998 and January 1999. (Doc. 5, Addendum Ex. No. 3.) Briefly, those crimes included: (1) Love's armed robbery

- 2 -

on December 18, 1998, of a Kentucky Fried Chicken restaurant,[1] during which he forced seven employees onto the floor before stealing money and the surveillance videotape (Vol. II at 8); (2) the robbery on December 21, 1998, by Love, Cobb and Malone of a U.S. Express check cashing business, in which the men followed an employee home, confronted her with a handgun, bound and gagged her son and grandparents, and forced her to drive the three men to the store and to give them money and the surveillance videotape (Vol. II at 8-9); (3) a botched, attempted armed robbery by all three men of a Grandy's Restaurant on January 5, 1999 (Vol. II at 10); and (4) an aborted attempt by Love and Cobb to rob another check cashing business on January 28, 1999 (Vol. II at 12).  The last attempted crime, in which Love and Cobb thought they would be assisted by another man, who was actually a confidential informant working with the FBI, led to the arrest of Love and Cobb.  (Vol. II at 12).  Malone was later arrested and eventually charged for his role in the crime spree, as well.

Initially, Malone tried to negotiate a plea agreement in exchange for cooperating with the government, but ultimately decided to go to trial instead.  He was convicted of seven of the charges contained in the indictment (Docs. 44 and

---

[1] During Cobb's sentencing hearing, Cobb's counsel informed the district court that Cobb was also present during the robbery of the Kentucky Fried Chicken, a fact of which the government was unaware before Cobb's plea agreement proffer.  (Vol. VIII at 6.)

65), and sentenced to approximately 65 years in prison (Doc. 65 at 2; Vol. IV at 9-10).

After extensive negotiations, Cobb entered into a Rule 11(e)(1)(C) plea agreement requiring that he serve a 25-year sentence in exchange for pleading guilty to one count of interfering with commerce by threats or violence, in violation of 18 U.S.C. § 1951, and one count of brandishing a firearm during the commission of the robbery, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). (Docs. 14 (superceding indictment), 47 (stating that Cobb pled guilty to counts 4 and 5 in the superceding indictment)). The district court, Chief Judge Terry Kern ("Judge Kern"), presiding, accepted Cobb's plea agreement.[2] (Vol. VIII at 8.)

Love also negotiated with the government a Rule 11(e)(1)(C) plea agreement that included a 38-year cap on his sentencing exposure. (Vol. VI at 6.) After reviewing Love's pre-sentence investigation report, however, Judge Kern refused to accept the plea agreement. (Id.) Judge Kern noted that Love was apparently the ringleader of the group, that the three men had forced their way

---

[2] The district court previously had rejected a plea agreement between Cobb and the government pursuant to which Cobb would have received 22 years' imprisonment, stating "I don't think it's off terribly. . . . But that many armed robberies, involvement, potential involvement in that many armed robberies and two carjackings, it seems to me is, particularly in view of the sentencing results that are anticipated in the other two cases, to be too lenient. . . . [I]t's my feeling that the appropriate sentence is somewhere between 25 to 30 years for Mr. Cobb's involvement in the instant offense . . . ." (Vol. V at 4.)

into a family's home, and that they had tied up the family and forced one woman to cooperate in the U.S. Express robbery at gunpoint. Further, noted Judge Kern, Love's extensive criminal history, which included charges of assault and battery, marijuana possession, larceny, incitement to riot, and possession of a firearm after a criminal conviction, placed him in criminal history Category V under the guidelines. (Id. at 5.) Judge Kern then commented:

> The minimum under the guidelines, not for all of the crimes that were committed, but just for those that the government has allowed this defendant to plead guilty to, is 46 years. And I see no justification for anything other than a guideline sentence in this case.
>     . . .

I've indicated what I think about 11(e)(1)(C).[3]  So if you happen to get [a plea agreement] that corresponds with what I think the sentence ought to be, why, I won't reject it.

(Id. at 6-7.)  Judge Kern then scheduled a two-week recess to allow Love to assess his options now that the 38-year plea agreement had been rejected, and to allow the government and Love a chance to negotiate another plea agreement.

---

[3]  Judge Kern had previously explained his view of Rule 11(e)(1)(C):

Now, perhaps there's some explanation that might be helpful, certainly to the government with regard to these 11(e)(1)(C) [agreements].  I know that there are some judges that won't accept them under any circumstances, and I don't subscribe to that theory.  I do agree that, generally, sentencing and decisions regarding punishment are best left to the Court.  And neither the U.S. Attorney's Office, nor the [C]ongress, through the sentencing guidelines, should attempt to control criminal sentencing.
. . .
There are occasions when I think it is appropriate to use an 11(e)(1)(C) . . .
. . .
I think there are occasions when the guidelines are too harsh.  I think there are occasions when there are mandatory sentences that are too punitive.  And there are times when the characteristics of the offender in the crime cry for some relief.  Those times, to my mind, involve first offenders.
. . .
So I think there are times when the chances of rehabilitation are good, or perhaps drug treatment might lead to restoration of a person to a normal law-abiding status.  And there are times when I think the guidelines do not allow the courts much leeway.  And in those instances, if the United States Attorney wants to use an 11(e)(1)(C), I have no objection to that.

(Vol. VI at 3-4.)

- 6 -

Love's counsel on appeal states that Love was "devastated" by Judge Kern's rejection of the 38-year plea agreement and believed that, with an anticipated Rule 11(e)(1)(C) plea agreement sentence of approximately 46 years, he would have the equivalent of a life sentence without possibility of parole regardless of whether he pled guilty or went to trial. (Aplt. Br. at 16.) He thus refused to authorize his attorney to continue plea negotiations and insisted on going to trial. (Id.)

Before Love's trial commenced, the case was transferred to Judge Thomas Brett (see generally Vol. XIII), and Love moved the court for reconsideration of the original plea agreement, (Vol. XIII at 5). Judge Brett rejected Love's argument that Judge Kern had improperly refused to accept the 38-year plea agreement negotiated by Love and the government, finding that Judge Kern's decision was "reasonable under the circumstances." (Vol. XIII at 22.)

The jury convicted Love of all fourteen counts contained in the indictment. At the sentencing hearing, Love's counsel objected to a proposed guideline sentence of 1,752 months (Vol. XIV at 5), in part because he believed Judge Kern "invalidated the sentencing process" by suggesting to Love and the government a sentence that would satisfy the court.[4] (Vol. XIV at 4, 31-33.) Judge Brett,

---

[4] In connection with this argument, Love's counsel also argued that Love was entitled to a 38-year sentence (Vol. XIV at 40 ("Well, what I've asked for is a 38-year sentence, Your Honor, back to the original deal.")), an idea Judge Brett

- 7 -

although expressing his concern with the result (id. at 29), stated "I just haven't got any discretion" in regard to sentencing because the crimes of which Love was convicted carried mandatory minimum, consecutive sentences totaling 1,752 months, or 146 years (id. at 23-26). Accordingly, Judge Brett sentenced Love to the minimum sentence available given his guideline range, 146 years in prison. (Tr. Vol. XIV at 50.)

## DISCUSSION

The district court had jurisdiction over Love's case pursuant to 18 U.S.C. § 3231. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

A.    Alleged Rule 11 Violation

Rule 11(e)(1) of the Federal Rules of Criminal Procedure states: "The court shall not participate in any discussions between the parties concerning any . . . plea agreement." Rule 11(e)(2) allows a district court presented with a Rule 11(e)(1)(C) plea agreement specifying the length of time the defendant will serve to defer a decision whether to accept the agreement until after "there has been an opportunity to consider the presentence report." If the court then decides to reject

---

squarely rejected, finding that a sentence of only 38 years was not "fair" given Love's level of involvement in the crimes charged (Vol. XIV at 40-41).

the plea agreement, Rule 11(e)(4) instructs the court to "inform the parties of this fact, advise the defendant personally in open court or, on a showing of good cause, in camera, that the court is not bound by the plea agreement, [and] afford the defendant the opportunity to then withdraw the plea . . . ." Love argues that Judge Kerns' remarks when rejecting the 38-year plea agreement pursuant to Rule 11(e)(2) and Rule 11(e)(4) violated Rule 11(e)(1)'s requirement that the "court shall not participate" in plea negotiations, and that we should therefore vacate his sentence and remand for a new trial. We disagree.

"Rule 11(e)(1) prohibits absolutely a district court from all forms of judicial participation in or interference with the plea negotiation process." United States v. Miles, 10 F.3d 1135, 1139 (5th Cir. 1993) (quotation marks omitted). An alleged deviation from the requirements of Rule 11(e) will not, however, mandate vacatur of the defendant's conviction or sentence in all cases. See Fed. R. Crim. P. 11(h) ("Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded.") Where a defendant has pled guilty after improper participation in the plea negotiation process by the district court, he generally has the right to ask an appellate court to vacate his plea and to either go to trial or reenter negotiations with the prosecuting authority. See, e.g., United States v. Bruce, 976 F.2d 552, 558-59 (9th Cir. 1992). This is because "[t]he primary purpose of Rule 11(e)(1) is to avoid the danger of an

involuntary guilty plea coerced by judicial intervention." United States v. Diaz, 138 F.3d 1359, 1363 (11th Cir. 1998).  Where a defendant alleging a violation of Rule 11(e)(1) chose not to plead guilty but instead to proceed to trial, however, an appellate court "conduct[s] a straightforward, two-question 'harmless error' analysis: (1) Did the sentencing court in fact vary from the procedures required by Rule 11, and (2) if so, did such variance affect substantial rights of the defendant." United States v. Crowell, 60 F.3d 199, 204 (5th Cir. 1995) (quotation marks and citations omitted); see also Diaz, 138 F.3d at 1363 (finding that the district court violated Rule 11(e)(1) but that the defendant, who was later convicted at trial, had not demonstrated that the court's improper comments compromised her neutrality or otherwise prejudiced the defendant, and thus that the defendant was entitled to no relief).

In this case, it is not necessary to decide whether Judge Kern's remarks constituted a violation of Rule 11(e)(1) because Love has made no showing that the alleged violation affected his substantial rights.  This is not a case in which Love accepted a guilty plea that was produced through negotiations with a judge, cf. Miles, 10 F.3d at 1140 (defendant who accepts guilty plea that judge helped negotiate is entitled to have conviction vacated and case remanded for trial), and Love does not argue that the alleged Rule 11(e)(1) error infected the trial or post-conviction sentencing hearing, cf. Diaz, 138 F.3d at 1363 ("Significantly, he does

not present any errors in his appeal regarding his trial, nor does he claim that his guilt was not clearly determined. Consequently, a new trial is unwarranted."); Crowell, 60 F.3d at 205 ("Since Crowell ultimately entered a plea of not guilty, and since there is no indication in the record that Crowell did not receive a fair trial, we have no problem finding that the court's violation of Rule 11 was harmless with regard to Crowell's conviction."). While a district court's suggestion of an appropriate sentence may warrant relief if the statement gave rise to the appearance of partiality, see Crowell, 60 F.3d at 205, Love's case was transferred to a different judge for trial and sentencing. Nothing in the facts before us suggests that Judge Brett prejudged the case, entered into an adversarial relationship with Love, or otherwise coerced him to accept liability. Cf. Bruce, 976 F.2d at 556-58 (9th Cir. 1992) (considering the policies behind Rule 11(e)(1): (1) ensuring parties are not coerced into pleas because of judicial pressure; (2) preventing defendants from viewing the judge as an adversary instead of a neutral arbitrator; and (3) protecting judges' objectivity by precluding them from advocating for any specific outcome). We find that the transfer of Love's case to a different district court judge for trial and sentencing purged the proceedings of any possible taint from Judge Kern's allegedly improper remarks. Cf. United States v. Adams, 634 F.2d 830, 842 (5th Cir. 1981) ("[A] defendant who has pled not guilty after unsuccessful plea discussions in which the judge has participated,

but who makes no showing of actual prejudice as a result of the judge's participation, should not receive a new trial but should be resentenced before a different judge.").

Finally, we reject Love's argument that the feeling of hopelessness that overtook him as a result of Judge Kern's remarks constitutes a deprivation of substantial rights. The original plea agreement between the government and Love contemplated a sentence of 38 years' imprisonment. The sentence Love might have received had he continued negotiations with the government after the initial plea agreement was rejected, 45 years' imprisonment (Vol. XIV at 47), was approximately eight years longer than the original, agreed-upon sentence. While Love now asserts that he was incapacitated from engaging in further negotiations due to this 8-year difference, we do not think his claimed incapacitation rises to the level of a deprivation of Love's substantial rights. In any event, Love himself declined to accept a second 11(e)(1)(C) plea agreement involving a sentence of approximately 45 years and chose instead to go to trial. The fact that Love now regrets that decision is insufficient to implicate his substantial rights.

Accordingly, we hold that Love is not entitled to relief because his substantial rights were not affected by any alleged violation of Rule 11(e)(1).

B.    Constitutional Claims

Love next argues that the disparity between the sentences imposed upon him and his accomplices violates principles of fundamental fairness and due process, as well as the Eighth Amendment's prohibition of cruel and unusual punishment.  We find these arguments unconvincing.

A jury convicted Love on all fourteen counts of the indictment, many of which involved violent crimes.  Nonetheless, the overwhelming majority of the 146-year sentence Love later received arose under 18 U.S.C. § 924(c), which creates mandatory minimum sentences for offenders who employ a firearm or other deadly weapon during the commission of a drug trafficking crime or a crime of violence.  Specifically, § 924(c) imposes a five-year mandatory minimum for the first violation, and mandatory consecutive sentences of 25 years for each violation thereafter.  See 18 U.S.C. § 924(c)(1)(C); Deal v. United States, 508 U.S. 129, 131-37 (1993) (finding that § 924(c)(1)(C)'s sentencing enhancement for "second or subsequent conviction[s]" can be applied in cases where the judgments of conviction are all entered at the same time).  Furthermore, Love's past criminal acts were substantial enough to warrant a criminal history category of V under the guidelines, the second highest possible criminal history classification.  (Aplt. Br. at 35.)

In contrast, Love's accomplice Cobb pleaded guilty to one count under 18 U.S.C. § 1951 and one count under § 924(c), and was sentenced to a term of 25 years. (Vol. VIII at 13-14.) Unlike Love, Cobb had no criminal history and there was no evidence Cobb carried a gun during the crimes.[5] Further, the evidence showed that Cobb was a "follower" rather than a "leader" when committing the charged offenses and that he had shown compassion for one of his victims. (Vol. VIII at 3-8.)

The third participant in the crimes, Malone, ceased his plea negotiation efforts and went to trial. He was convicted on seven counts, including three counts under § 924(c). (Doc. 44.) The court sentenced him to 65 years in prison, the minimum sentence available under the statutes and guidelines. (Doc. 65 at 2.)

We have previously held that a criminal defendant alleging a disparity between his sentence and the sentence of a co-defendant is not entitled to relief from a sentence that is properly within the sentencing guidelines and statutory requirements. See, e.g., United States v. Blackwell, 127 F.3d 947, 951-52 (10th Cir. 1997) (stating that the guidelines are intended to equalize sentences on a national level and that disparities among individual co-defendants are not grounds

---

[5] Although Cobb pled guilty to one count of brandishing a firearm during the commission of a robbery, see supra p. 3, the evidence indicated that he had not actually carried the firearm and instead only aided and abetted Love's use of a firearm.

for a downward departure). This has been held to be the case both where the defendant alleges an Eighth Amendment violation due to the disparity, United States v. Youngpeter, 986 F.2d 349, 355-56 (10th Cir. 1993), and where the defendant alleges a due process or equal protection violation based upon the disparity, United States v. Trujillo, 906 F.2d 1456, 1465 (10th Cir. 1990). In Blackwell, we noted that this holding is in accord with cases in every other federal appellate circuit. See 127 F.3d at 951-52 (citing collected cases from other circuits holding that "disparity between sentences of co-defendants . . . is not a proper basis for sentence reduction beyond the guidelines minimum").

Love asks us to depart from the above cases based upon the magnitude of the difference between his sentence and the sentences of his co-defendants, and correctly notes that none of the cases cited above deal with disparities of a scale similar to this case.

We reject Love's request that we depart from this court's precedent. As an initial matter, we note that each defendant in this case was sentenced for different crimes. Love had a significantly greater criminal history than the others, and Cobb assisted the government while Love and Malone insisted on going to trial. Under these circumstances, disparate sentences were not only permissible, they were required by the guidelines because none of the defendants were similarly situated with the other defendants. As we stated in Youngpeter, 986 F.2d at 356,

- 15 -

"When two or more defendants are convicted of the same crime a sentencing difference may be expected as the [s]entencing [g]uidelines dictate a sentence based upon each defendant's conduct and criminal history. Sentencing differences due to individual conduct as considered by [the guidelines] do not make a sentence disproportionate." See also Trujillo, 906 F.2d at 1565.

Moreover, none of the cases to which Love refers suggest that the outcome of the case depended on the size of the disparities involved. To the contrary, the cases simply reject disparity in sentence length as a basis for relief, and instead address only whether the sentence is proportional to each defendant's culpability for the crime. Again, in Youngpeter we observed:

> Disparity of a codefendant's sentence comes within a request for proportionality review. The Eighth Amendment requires that a sentence not be disproportionate to the severity of the crime or involve unnecessary infliction of pain. Within this limitation, the determination of the proper penalty is a matter for the legislature. If the imposed sentence is within the statutory limits, . . . an appellate court generally will not regard it as cruel and unusual punishment.

Id. (quotation marks and citations omitted).

Love does not contend that the district court erred in applying the guidelines to his conviction or, for that matter, to either of his co-defendants' convictions. Therefore, he must show that his 146-year sentence is disproportionate to the severity of his crimes or that it involves unnecessary infliction of pain, without regard to the sentences handed down against Cobb and

- 16 -

Malone. Love did not raise this issue on appeal, and accordingly we do not address it in this opinion.

We find that the sentencing disparity between Love and his co-defendants does not violate Love's rights of due process, equal protection, or to be free of cruel and unusual punishment.

B.    Apprendi

Love also contends that his sentence violated due process pursuant to the Supreme Court of the United States' holding in Apprendi v. New Jersey, 120 S.Ct. 2348, 2355, 2362-63 (2000). In Apprendi, the Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 2262-63. Love acknowledges that this issue was not raised before the trial court, but we have stated that this court may review alleged Apprendi violations for plain error on appeal. See United States v. Keeling, 235 F.3d 533, 538-40 (10th Cir. 2000) (applying plain error analysis to Apprendi challenge raised for the first time on appeal).

The gravamen of Love's argument is that the court did not submit all the elements required for a conviction under § 924(c) to the jury. Section 924(c) requires the government to prove that (1) during and in relation to (2) a crime of

violence or drug trafficking crime (3) for which the defendant may properly be prosecuted in federal court (4) the defendant used or carried a firearm, or (5) possessed a firearm in furtherance of that crime. In this case, Love argues that "the question of possession, or in fact, all of the elements of the 924(c) charges, which greatly increased the defendant's sentence, were not submitted to the jury and hence [were not] proven beyond a reasonable doubt." (Aplt. Br. at 44.)

Love does not elaborate on this contention, and it does not find support in the record. The jury instructions read:

> You are instructed that Title 18, United States Code, section 924(c)(1) provides in pertinent part:
> Any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm . . .
> Shall be guilty of an offense against the United States
> . . .
> In order to sustain its burden of proof for the crime of using or carrying a firearm during and in relation to a crime of violence . . . the government must prove the following essential elements beyond a reasonable doubt:
> . . .
> 2. During and in relation to the commission of the crime set forth in the count, the defendant knowingly used or carried a firearm, or that the defendant possessed a firearm in furtherance of that crime.

(Aplt. App. at Addendum 13.) Further, the jury instructions set forth an extensive and detailed definition of the meaning of "possession" to which Love's counsel apparently did not object at trial. (Id.)

- 18 -

Accordingly, we find the jury instructions properly placed the burden of proof for each element on the government, and therefore find Love's <u>Apprendi</u> challenge meritless.

D.    <u>Hobbs Act</u>

Finally, Love argues that the Supreme Court's recent holding in <u>United States v. Morrison</u>, 120 S.Ct. 1740 (2000), requires a finding that Congress's enactment of the Hobbs Act, 18 U.S.C. § 1951, exceeded Congress' powers under the Commerce Clause.  Specifically, Love argues that the Court's holding in <u>Morrison</u>, 120 S.Ct. at 1751, <u>i.e.</u>, that Congress' enactment of the Violence Against Women Act ("VAWA") was unconstitutional because the Commerce Clause does not give Congress authority to regulate purely non-economic criminal behavior, mandates a finding that the Hobbs Act is similarly unconstitutional.

Love's argument is foreclosed by <u>Stirone v. United States</u>, 361 U.S. 212, 215 (1960), and this court's opinion in <u>United States v. Malone</u>, 222 F.3d 1286 (10th Cir. 2000).  Section 1951 reads in pertinent part:

> Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.

- 19 -

18 U.S.C. § 1951(a). In Stirone, the Supreme Court held that the broad jurisdictional language of § 1951, which regulates crimes "affect[ing] commerce or the movement of any article or commodity in commerce," manifests "a purpose to use all the constitutional power Congress has to punish interference with interstate commerce by extortion, robbery or physical violence." 361 U.S. at 215. In other words, the jurisdictional element of § 1951, "affect[ing] commerce," itself limits the scope of the Hobbs Act to crimes falling within Congress' Commerce Clause power. See also 18 U.S.C. § 1951(b)(3) (defining "commerce" for purposes of the Hobbs Act).

In Malone, where we were asked to review the Hobbs Act convictions of Love's co-defendant Malone, we considered the effect of Morrison on the constitutionality of § 1951. See id. at 1294-95. Malone argued that the impact of the three men's crimes on interstate commerce was insufficient to satisfy § 1951's jurisdictional element because Morrison required a "showing of a substantial effect on interstate commerce." Id. at 1294. In rejecting Malone's challenge, we stated:

> Unlike the statutes at issue in Morrison and Lopez, the Hobbs Act regulates economic activity. Furthermore, the Hobbs Act contains an explicit and expansive jurisdictional element establishing that it is in pursuance of Congress' power to regulate interstate commerce. Thus, we do not believe Morrison impacts our prior decisions discussing the jurisdictional element of the Hobbs Act.

Id. (citations omitted). Although Malone's argument arose in a slightly different context, our holding in Malone makes clear that, despite the Supreme Court's holding in Morrison, criminal activity having a direct, albeit de minimis, effect on economic activity meets the jurisdictional threshold of § 1951(a). Given our holding in Malone that the Hobbs Act was constitutional as applied to Love's co-defendant, it would be difficult if not impossible for this panel to conclude that the Hobbs Act is unconstitutional on its face as applied in this case.

Finally, as the Eleventh Circuit Court of Appeals noted in United States v. Gray, No. 00-11491, 2001 WL 883527 (11th Cir. Aug. 7, 2001):

> Unlike the statute at issue in Morrison, the Hobbs Act plainly and undeniably regulates economic activity. Robbery, even though accompanied by actual or threatened physical harm, is undeniably an economic crime that involves the involuntary transfer of economically valuable assets. The relationship between robbery and commerce is clear, direct, and unattenuated.

Id. at *5 (citations omitted). The Hobbs Act is intended to regulate behavior that directly affects interstate commerce. Accordingly, the Morrison Court's analysis of VAWA, a statute directed at regulating activity that is unquestionably non-economic in nature, is wholly inapposite to the case at bar.

For these reasons, we reject Love's argument that the Hobbs Act represents an unconstitutional exercise of Congress' Commerce Clause powers.

**CONCLUSION**

For the foregoing reasons, we AFFIRM the decision of the district court.


ENTERED FOR THE COURT


David M. Ebel
Circuit Judge