UNITED STATES of America

v.

**Stephen BUNDY, Defendant.**

No. 1:03CR00015.

United States District Court,
W.D. Virginia,
Abingdon Division.

March 28, 2005.

---

Randy Ramseyer, Assistant United States Attorney, Abingdon, VA, for United States.

Robert M. Galumbeck and Michael L. Dennis, Dudley, Galumbeck, Necessary & Dennis, Tazewell, VA, for Defendant.

## OPINION SETTING FORTH REASONS FOR SENTENCE

JONES, Chief Judge.

In this opinion I set forth my reasons for a sentence imposed on the defendant below the advisory guideline range, as the result of an agreement by the parties.

On February 12, 2003, a grand jury of this court returned a four-count indictment charging the defendant, Stephen Bundy, with the following firearms crimes: (1) possession of a USAS–12 shotgun, not registered to him in the National Firearms Registration and Transfer Record ("NFRTR") (Count One); (2) possession of a "Street Sweeper" shotgun, not registered to him in the NFRTR (Count Two); (3) possession of a Colt AR–15 firearm with a twelve-inch barrel, not registered to him in the NFRTR (Count Three); and (4) possession of a stolen firearm that had traveled in interstate commerce (Count Four). *See* 26 U.S.C.A. §§ 5841, 5861(d), 5871 (West 2002); 18 U.S.C.A. § 922(j) (West 2000).

According to the government, on January 14, 2003, federal agents observed Bundy, who was then a deputy sheriff in Russell County, Virginia, firing a short-barrel firearm at a local firing range. A search warrant was obtained and executed that day at Bundy's residence and numerous firearms and ammunition were discovered, including the firearms described in Counts One, Two and Three of the indictment. It was confirmed that these firearms were not registered to him in the NFRTR, as required. In addition, the agents seized a .22 caliber revolver that had been confiscated by Bundy from a citizen in 1999. The agents also found other evidence that had been taken from the Russell County Sheriff's Department, including drugs and drug paraphernalia.

On April 22, 2003, after certain pretrial motions had been denied, Bundy entered a guilty plea to Count Two of the indictment pursuant to a written plea agreement. In the plea agreement, the parties stipulated that Bundy "shall have the right to appeal the District Court's denial of [his] Motions to Suppress, Produce and Dismiss pursuant to F.R.C.P. 11(a)(2)." On July 10,

2003, a sentencing hearing was held, at which Bundy's guideline range under the United States Sentencing Guidelines was determined to be from thirty to thirty-seven months imprisonment. Prior to sentencing, the government asked the court to sentence Bundy at the upper end of the guideline range:

> MR. RAMSEYER [attorney for the government]: Your Honor, this is a, a significant case because Mr. Bundy was a law enforcement officer and it does make a difference. People talk about everyone should be treated exactly the same. I'm [not] sure that's really true. A law enforcement officer, when he, when he violates a crime, uh, a law, it's more serious than anyone else because it erodes people's confidence in the system and the people that are enforcing the system. And when Mr. Bundy, as he said on the stand, knowingly and willfully violates the law, he does serious damage to the criminal justice system. So, we would ask the Court to sentence at the high end of the Guidelines' range of imprisonment. Thank you.

(Tr. 41.) I agreed, and Bundy was sentenced to thirty-seven months imprisonment, fined $2,000, ordered to pay a special assessment of $100, and placed on supervised release following imprisonment for a term of three years.

As permitted by the plea agreement, Bundy appealed. On December 17, 2004, the court of appeals vacated the judgment on the ground that the plea agreement impermissibly permitted the appeal of a nondispositive pretrial issue, namely a pretrial Motion to Produce denied by a magistrate judge of this court. *United States v.*

*Bundy,* 392 F.3d 641, 649 (4th Cir.2004). Following this decision, after Bundy had served approximately sixteen months of the thirty-seven months term of imprisonment, I released him on bond.

The case was reset for trial, but the parties entered into a new plea agreement by which Bundy agreed to plead guilty to Count Three of the indictment. The parties also agreed that Bundy would receive a sentence equal to the amount of prison time already served, together with a term of supervised release of five years. I accepted Bundy's guilty plea, but took under advisement the acceptance of the plea agreement.

■■■ Rule 11(c) provides that the parties may enter into a plea agreement by which they agree that a specific sentence is the appropriate disposition of the case. Fed.R.Crim.P. 11(c)(1)(C). The court may then accept or reject that plea agreement, *id.* 11(c)(3), and if it rejects the agreement, the court must give the defendant an opportunity to withdraw his plea, *id.* 11(c)(5), (d)(2)(A). A defendant has "no absolute right to have a guilty plea accepted." *Santobello v. New York,* 404 U.S. 257, 260–61, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). While there is no special guidance given by Rule 11, a sentencing court clearly has the discretion to reject a plea agreement on the ground that it is unduly lenient. *United States v. Crowell,* 60 F.3d 199, 205–06 (5th Cir.1995). The issue before me was thus whether the proposed reduction in the defendant's sentence should lead me to reject the agreement submitted by the parties.[1]

The government urged the court to accept the plea agreement and the defen-

---

1. The proposed plea agreement stipulated to five years of supervised release, rather than three years as originally imposed. However, the offense to which Bundy pleaded guilty is a Class C felony, 18 U.S.C.A. § 3581(b)(3) (West 2000), for which by statute the maximum term of supervised release is three years, 18 U.S.C.A. § 3583(b)(2) (West 2000). Thus, I cannot sentence Bundy to more than three years supervised release.

dant's reduced sentence for the following reasons: (1) the litigation was protracted and the government had an interest at this point in bringing it to an end; (2) while the government believed it would ultimately prevail in the prosecution, the proposed plea agreement would at least leave Bundy with a felony conviction, thus precluding his future possession of firearms; and (3) the recent decision of the Supreme Court in *United States v. Booker*, —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), allowed the court to sentence without mandatory adherence to the Sentencing Guidelines.

No facts were presented by the parties either as to Bundy's criminal conduct or as to any relevant factors under the Sentencing Guidelines different from those known to the court at Bundy's prior sentencing in 2003.[2] The government simply decided that it is now agreeable to a more lenient sentence, and one that is below the range established by the Sentencing Guidelines.

■ Before *Booker*, there was a split of authority as to whether a district court has the authority to accept a Rule 11(c)(1)(C)[3] plea agreement that disregarded the applicable Sentencing Guidelines range. *See* Joseph S. Hall, *Rule 11(e)(1)(C) and the Sentencing Guidelines: Bargaining Outside the Heartland?*, 87 Iowa L.Rev. 587, 595 (2002) (reviewing cases).[4] After *Book-*

er, of course, there can be no reasonable argument that the court does not have the authority to accept an agreed sentence below the guideline range, although it obviously retains the discretion to refuse such an agreement.[5]

The Sentencing Guidelines themselves provide that acceptance of a stipulated sentence below the guideline range should occur only where the sentence is based on a recognized departure ground. *See* U.S. Sentencing Guidelines Manual § 6B 1.2, cmt. (2004). The guidelines are not now mandatory, including this provision, and thus I must determine whether the sentence agreed to by the parties is reasonable within the meaning of *Booker*, understanding that no recognized ground for departure has been suggested.

■ That portion of the Sentencing Reform Act of 1984 kept alive by *Booker*, 18 U.S.C.A. § 3553(a) (West 2000 & Supp. 2004), sets forth the factors that must be considered by the sentencing court, but does not expressly list the government's justifications for the present stipulated sentence. In other words, the exigencies of plea bargaining from the government's point of view—limited resources and uncertainly of result—are not specific sentencing goals of § 3553(a). Nevertheless, I find that I am not prohibited from considering these factors, so long as the sen-

---

2. Bundy filed a Motion to Dismiss which had not been presented in the prior proceedings in this court. The new motion was apparently suggested by inquiries from the court of appeals, which ordered supplemental briefing on certain Fifth Amendment concerns raised by the firearms registration statutes. In view of its disposition of the appeal, the court of appeals did not decide these questions.

3. Before a 2002 reorganization of the Rules of Criminal Procedure, the rule was designated 11(e)(1)(C).

4. There are few appellate decisions on the point, which is probably because in most

cases the Rule 11(c)(1) plea agreement is accepted by the court and thus no party has a ground to appeal. There is no Fourth Circuit authority on the issue.

5. Indeed, one pre-*Booker* decision suggested that in deciding whether to accept a 11(c)(1)(C) plea agreement below the guideline range, the sentencing court should consider the guidelines as only advisory—just as *Booker* provides now for all sentencing situations. *See United States v. Goodall*, 236 F.3d 700, 705 (D.C.Cir.2001).

tence is otherwise reasonable in light of § 3553(a).

In view of all the circumstances, I find the agreed-upon sentence reasonable, notwithstanding the government's dramatic about-face. My experience with the prosecutor convinces me that this decision is not lightly made, or for any undisclosed motive. While I previously sentenced the defendant at the high end of the guideline range because of his breach of trust as a law enforcement officer, the range itself was prescribed and my only discretion under the circumstances was the point within the range to fix the sentence. The stipulated sentence is reasonable, taking into account the goals of the Sentencing Reform Act, as was the sentence previously imposed.