UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
No. 92-9074

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

GREGORY LYNN MILES,

Defendant-Appellant.

*****************************************************

_____

No. 92-9091
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

GERALD JEHORAM GUSTUS,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Northern District of Texas
_____
(December 27, 1993)

Before GOLDBERG, JOLLY, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

These appeals turn on whether the district court reversibly erred by engaging in plea negotiations in contravention of Federal Rule of Criminal Procedure 11(e)(1).  In asserting that it did, Gregory Lynn Miles and Gerald Jehoram Gustus challenge their

convictions obtained through plea agreements.  We **REVERSE** their convictions and **VACATE** their sentences.[1]

## I.

Based upon five armed robberies over a two-month period in late 1991, Miles and Gustus were charged with conspiracy to commit robbery and four counts of robbery, all affecting interstate commerce, in violation of 18 U.S.C. § 1951, and four counts of using a firearm in committing a crime of violence, in violation of 18 U.S.C. § 924(c).  And, Gustus was charged with an additional § 924(c) count and robbery count.

Through plea agreements, Miles pled guilty to the conspiracy to commit robbery count, one § 924(c) count, and a charge of possession of a firearm by a felon (violation of 18 U.S.C. § 922(g))[2]; Gustus, to the conspiracy count and two § 924(c) counts. The district court, however, rejected both agreements.  Following the discussion at issue with the district court, Miles and Gustus entered into new agreements: Miles pled guilty to two additional § 924(c) counts; Gustus, to one additional § 924(c) count.  The district court accepted their pleas, and imposed prison sentences on Miles and Gustus of approximately 58 and 63 years, respectively.

---

[1]    Miles and Gustus also challenge their sentences; but, because we vacate them as a result of reversing the convictions, we do not reach these issues.

[2]    This charge was from a separate case.

Miles and Gustus contend that their convictions should be reversed because the district court participated in plea negotiations, in violation of Rule 11(e)(1).[3] Under the original plea agreements, Miles faced a sentence of approximately 17 years; Gustus, approximately 40. When the agreements were presented at the sentencing hearing in September 1992,[4] the district court, in

---

[3] In the briefs on appeal, only Gustus specifically raised this issue; nevertheless, Miles did include the colloquy, quoted *infra*, that gave rise to Gustus' Rule 11 contention. Moreover, after these appeals were consolidated *sua sponte* for oral argument, Miles urged there the Rule 11 contention. Therefore, we consider the issue raised by Miles for this appeal. In any event, *see* **United States v. Gray**, 626 F.2d 494, 497 (5th Cir. 1980), *cert. denied*, 449 U.S. 1091 (1981):

> Ordinarily we would limit each defendant's appeal to the issues raised in his brief. However, we have discretion to suspend the Federal Rules of Appellate Procedure "for good cause shown," Fed. R. App. P. 2. Believing it anomalous to reverse some convictions and not others when all defendants suffer from the same error, we consider the arguments to be adopted.... This adoption does not prejudice the government which had the opportunity to fully brief all issues in response to the various contentions of the defendants.

(Citations omitted.) This notwithstanding, we caution counsel to state specifically in the opening brief the issues raised on appeal; the failure to do so will usually result in our not considering them. **Zuccarello v. Exxon Corp.**, 756 F.2d 402, 407-08 (5th Cir. 1985) (concluding that Fed. R. App. P. 28(a)(4) counsels that "when an appellant raises an issue for the first time at oral argument, the Court ordinarily will not consider it"); *see also* Fed. R. App. P. 28(a)(4) ("The brief of the appellant shall contain ... the contentions of the appellant with respect to the issues presented").

[4] Miles pled guilty before the district court on July 2, 1992; Gustus, on July 10. It accepted both pleas, but, pursuant to Rule 11(e)(2), informed both that, after presentence reports were prepared, it could reject the plea agreements. A sentencing hearing was scheduled; but, before that hearing, the court notified

addition to the indictment, had the following information, based on stipulated facts and presentence reports: Miles and Gustus employed handguns in the robbery of five restaurants within two months; both were on probation for aggravated robbery convictions from prior, joint conduct (the convictions had been obtained within two months of the first robbery at issue in this case); both had state charges pending against them for other robberies (in some of which they acted together); one of those other robberies in which both participated occurred after the robberies giving rise to the federal offenses (Gustus pled guilty and received a 35-year sentence; charges against Miles for that robbery were still pending); and, during one of the robberies at issue in the instant case, Gustus forced a female employee to perform oral sex on him.

Accordingly, the following colloquy, on which appellants base error, ensued:

> THE COURT: Okay. One of the things that none of you have touched on is the statutory objective of 924(c) of Title 18. And Congress told me by that that I shall give a 20-year sentence on each one above the first one.
>
> I think that's one of the things -- though it doesn't specifically say so -- I think that is one of the things that should be taken into account and might be a determinative factor under [U.S.S.G.] policy statement 6B1.2.
>
> I am impressed that in Title 18 [§] 924(c) Congress told me I shall not place on probation or suspend the sentence of any person convicted of a violation of that subsection, nor shall any term of imprisonment imposed under that subsection run concurrently with any other term of imprisonment, so on.

---

both that it had questions about the agreements.

I don't think Congress could have made it any clearer to me what their intent is. Their intent is in crimes of this kind that that person be put in prison for five years the first time he commits an offense -- is first convicted of one -- and for 20 years each time he is convicted of one thereafter. That is what Congress told me they intended and expected of me.

Even if we did not let that control, I'm not satisfied that the sentences I can impose under the plea agreements in these cases adequately reflect the seriousness of the offenses.

I am not sure that they would adequately promote respect for the law, and I am not sure that they would provide just punishment. To the contrary, I believe they would do none of those things.

I don't believe the sentences in this case would provide adequate deterrence for the kind of conduct these defendants engaged in. And I would have some concern, if these defendants were to be released from prison, even with the sentences as long as they might be in this case, that the public would not be protected from the possibility of further crimes by these defendants.

And, therefore, I am not accepting either one of these plea agreements.

...

[UNITED STATES ATTORNEY]: Can I ask a question? And I apologize, if it is an inappropriate question.

THE COURT: Yes.

[UNITED STATES ATTORNEY]: Is there anything short of a plea on all of the 924(c)s the court might consider?

THE COURT: I think your initial comment is correct --

[UNITED STATES ATTORNEY]: Thank you.

THE COURT: -- that it would be inappropriate for me to say what I would or would not accept.

- 5 -

I will say this: If I was satisfied that these people likely would never get out of prison I would feel more comfortable.

[UNITED STATES ATTORNEY]: And the comment I had, Your Honor, is simply I don't want to continue wasting the court's time if we were to set a date for a plea next Friday with additional time, if we are just going to be wasting the court's time.

THE COURT: Well, it would just seem to me that in the Gustus case, if he had another 20 years to serve, and that in the Miles case, if he had another 40 years to serve beyond what is now contemplated -- or that wasn't contemplated -- that that could serve the objectives that I think were intended to be served.

Miles and Gustus contend that, through the quoted colloquy, the district court ran afoul of Rule 11(e)(1)'s admonition that "[t]he court shall not participate in ... [plea negotiation] discussions." A district court is free, of course, to reject a plea agreement, Fed. R. Crim. P. 11(e)(4), and may express its reasons for doing so. *See **United States v. Bean***, 564 F.2d 700, 704 (5th Cir. 1977) (reviewing reasons proffered by district court for rejecting plea agreement under abuse of discretion standard); *cf.* U.S.S.G. § 6B1.2(a) (requiring that the court find, on the record, that a plea agreement adequately reflects the seriousness of offense conduct before accepting it). But, Rule 11(e)(1) prohibits absolutely a district court from "all forms of judicial participation in or interference with the plea negotiation process." ***United States v. Adams***, 634 F.2d 830, 835 (5th Cir. 1981); *see also **United States v. Corbitt***, 996 F.2d 1132, 1134 (11th Cir. 1993) (citing and quoting ***Adams*** for proposition that there is "an absolute prohibition on all forms of judicial participation" in

- 6 -

plea negotiations); ***United States v. Barrett***, 982 F.2d 193, 195 (6th Cir. 1992) ("Courts ... have uniformly held that [Rule 11] means what it says:  the court shall not participate in any plea agreement negotiations."); ***United States v. Bruce***, 976 F.2d 552, 558 (9th Cir. 1992) ("the unambiguous mandate of Rule 11 prohibits the participation of the judge in plea negotiations under *any* circumstances:  it is a rule that ... admits of no exceptions.") (emphasis in original).

The reasons for the rule "admit[ting] of no exceptions", ***Bruce***, 976 F.2d at 555, have been iterated by this and other circuits, but they merit brief reiteration.  First and foremost, it serves to diminish the possibility of judicial coercion of a guilty plea, regardless of whether the coercion would cause an involuntary, unconstitutional plea.  ***Adams***, 634 F.2d 838-39; *see also* ***Barrett***, 982 F.2d at 194 ("The primary reason for Rule 11 is that a judge's participation in plea negotiation is inherently coercive"); ***Bruce***, 976 F.2d at 556 ("judicial involvement in plea negotiations inevitably carries with it the high and unacceptable risk of coercing a defendant to accept the proposed agreement").  Second, such involvement "is likely to impair the trial court's impartiality.  The judge who suggests or encourages a particular plea bargain may feel a personal stake in the agreement ... and may therefore resent the defendant who rejects his advice." ***Adams***, 634 F.2d at 840;  *see also* ***Barrett***, 982 F.2d at 195 ("a judge's neutrality can be compromised"); ***Bruce***, 976 F.2d at 557 ("Judicial involvement detracts from a judge's objectivity.").   Third,

"judicial participation in plea discussions creates a misleading impression of the judge's role in the proceedings. `As a result of his participation, the judge is no longer a judicial officer or a neutral arbiter. Rather, he becomes or seems to become an advocate for the resolution he has suggested to the defendant.'" *Adams*, 634 F.2d at 841 (quoting and citing *United States v. Werker*, 535 F.2d 198, 203 (2d Cir.), *cert. denied*, 429 U.S. 926 (1976)); *see also* *Bruce*, 976 F.2d at 557 ("The loss of judicial integrity is particularly serious when ... the judge explicitly or implicitly advocates a particular bargain.") (citation omitted).

For these reasons, Rule 11(e)(1) draws a bright line, prohibiting judicial participation in plea negotiations. *See* *Bruce*, 976 F.2d at 556 (describing Rule 11(e)(1) as a "bright-line rule"); *see also* *Adams*, 634 F.2d at 839 (characterizing rule as "strict" and noting that it establishes an "absolute ban on judicial participation"). This notwithstanding, the government presents three bases for urging that the district court's comments do not constitute reversible error.

A.

First, the government maintains that the court was not involved in plea negotiations. But, the statements by the court went well beyond a mere rejection of the agreements and explanation for it; they suggested, at the very least, the agreements that would be acceptable. After the district judge stated that "it would be inappropriate for [him] to say what [he] would or would

not accept", he stepped over the line and became involved in the negotiations.

B.

Next, although the government recognizes that the court "went further than merely stating his reasons for rejecting the plea agreement[s]", it counters that the comments did not violate Rule 11, because they were "in open court, at the time of sentencing, after the court had reviewed the presentence report[s] and had knowledge of all relevant facts." Because no reported decisions deal with such judicial participation at this time and in this manner, the government seems to suggest that such comments are not prohibited. Moreover, without further support or comment, it relies upon the following portion of the Advisory Committee's Notes on the amendment to Rule 11 in 1974:[5]

> The amendment makes clear that the judge should not participate in plea discussions leading to a plea agreement. It is contemplated that the judge may participate in such discussions as may occur when the plea agreement is disclosed in open court.

Fed. R. Crim. Proc. 11(e)(1) Advisory Committee's Note, 1974 Amendment.

Needless to say, a court must be free, in certain respects, to take an "active role" once the agreement is disclosed. *See Adams*, 634 F.2d at 835. In fact, Rule 11 mandates it, to include: "addressing the defendant personally in open court" to ensure "that the plea is voluntary and not the result of force or threats or of

---

[5]  Among other things, that amendment added subsection (e)(1) to Rule 11.

promises apart from a plea agreement", Rule 11(d); inquiring "as to whether the defendant's willingness to plead guilty or nolo contendere results from prior discussions between the attorney for the government and the defendant or the defendant's attorney", *id.*; "making such inquiry as shall satisfy it that there is a factual basis for the plea", Rule 11(f); and either accepting or rejecting the plea agreement and stating the reasons for doing so, *see* Rule 11(e)(3). *Adams*, 634 F.2d at 839 ("Rule 11 emphatically makes it the responsibility of the trial judge to test the validity of the bargain which results from plea negotiations: the judge is required systematically to inquire into the defendant's understanding and intention, to examine the factual basis of the plea, and to explain to the defendant the charges against him, the maximum penalties he faces, and the rights he will waive by a plea of guilty.")

The commentary to the 1974 amendment merely made clear that these post-plea discussions do not violate Rule 11(e)(1). Obviously, the commentary does not trump the Rule and allow full-blown judicial participation in crafting a new agreement once a tendered agreement is rejected. To the contrary, the role a district court must play after a plea agreement is reached "requires the greatest possible assurance of judicial neutrality"; therefore, the strict rule against judicial participation calculated to lead to a plea agreement must remain inflexible. *See Adams*, 634 F.2d at 839.

In sum, Rule 11 requires that a district court explore a plea agreement once disclosed in open court; however, it does not license discussion of a hypothetical agreement that it may prefer. *See Bruce*, 976 F.2d at 556 ("Rule 11(e)(1) simply commands that the judge not participate in, and remove him or herself from, any discussion of a plea agreement that has not yet been agreed to by the parties in open court."). The district court's comments went beyond exploring the presented agreements.

### C.

Finally, the government urges harmless error, based upon Rule 11(h): "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Previously, we identified judicial participation in plea negotiations as an error implicating a core concern of Rule 11. *Adams*, 634 F.2d at 839. As such, we might have found that a guilty plea entered after judicial participation was reversible *per se*. However, Rule 11(h) and our recent decision in *United States v. Johnson*, 1 F.3d 296 (5th Cir. 1993) (*en banc*), compel harmless error review. Nevertheless, *Johnson* noted that "[i]t is difficult to imagine a situation in which the trial court would neglect entirely to mention one of what were formerly our `core concerns' and ... not `affect substantial rights.'" *Id.* at 302 n.26.

The government does not cite, nor does our research find, one instance in which a federal court has found judicial participation in plea negotiations to be harmless error. In fact, we concluded in *Adams* that such participation constituted plain error under Rule

52(b), even though the defendant did not plead guilty after that participation. *Adams*, 634 F.2d at 836. Of course, plain error occurs only when, *inter alia*, it is established that the error affects substantial rights, which by definition forecloses finding harmless error. *E.g.*, **United States v. Lopez**, 923 F.2d 47, 49 (5th Cir.) (per curiam), *cert. denied*, 111 S. Ct. 2032 (1991).

Moreover, the Sixth Circuit recently addressed a judicial participation claim in light of Rule 11(h)'s harmless error requirement. It refused to look at statements made by the district court that may have mitigated the effect of its participation, stating:

> This court's role is not to weigh the judge's statements to determine whether they were so oppressive as to abrogate the voluntariness of the plea. "Rule 11 is obviously intended *totally* to eliminate pressures emanating from judicial involvement in the plea bargaining process...." **Werker**, 535 F.2d at 203 (emphasis added). By trying to facilitate a plea bargain, the judge indicated that he desired an agreement; this is pressure enough. [Appellant] must be allowed to withdraw his guilty plea.

**Barrett**, 982 F.2d at 196. Indeed, the pressure inherent in judicial participation would seem to be reason enough to reverse a conviction when the defendant accedes to the plea suggested by the district court. *See* **Barrett**, 982 F.2d at 194 ("By intervening to facilitate a plea, however, the judge communicated to the defendant that he desired a plea. He thereby raised the possibility, if only in the defendant's mind, that a refusal to accept the judge's preferred disposition would be punished.") (citations omitted); **Werker**, 535 F.2d at 202 ("the defendant may ... believe himself to

be prejudiced if he does not plead guilty in response to the judge's proposed sentence"). Accordingly, the following review of the government's bases for urging harmless error is necessarily heightened by the alacrity with which this court and others have upheld the prohibition against judicial participation in plea negotiations.

## 1.

The government asserts that, insofar as Gustus is concerned, he "benefited by the court's comments because subsequent plea negotiations resulted in [his] pleading guilty to only one more count ... than he had originally pled to." This plea to one more § 924(c) count corresponded exactly to the court's suggestion that another 20 years would be necessary before it would accept an agreement.[6] No doubt, the court's suggestion dictated this outcome, as "[s]tatements and suggestions by the judge are not just one more source of information to plea negotiators; they are indications of what the judge will accept, and one can only assume that they will quickly become `the focal point of further discussions.'" *Adams*, 634 F.2d at 835 (quoting *Werker*, 535 F.2d at 203).

We cannot measure the harm to Gustus, because we cannot know what agreement, if any, would have been reached absent the judicial participation. For example, he might have agreed to plead guilty

---

[6]     Gustus planned to plead guilty pursuant to the second plea agreement; but, at a hearing on October 16, 1992, he changed his mind and pled not guilty. On October 19, the date on which trial was to commence, he changed his mind again and pled guilty.

to another of the robbery counts.  Under that scenario, he would serve more time than under his initial agreement, but not incur mandatory time as with another § 924(c) count.[7]  And, the court, if presented with that option, might have accepted it.[8]  We cannot deem the error harmless so far as Gustus is concerned.

2.

As discussed *supra*, note 3, Miles did not raise specifically the Rule 11(e)(1) issue in his brief.  In any event, the government's discussion of harmless error in response to Gustus was general; and, because we conclude that Miles raised the issue, we will assume that the government's harmless error contention regarding Miles would track that for Gustus.

As was the case with Gustus, Miles' second plea corresponded exactly to the court's suggestion; he pled guilty to two additional

---

[7]     18 U.S.C. § 924(c)(1) provides, in pertinent part:

> Whoever, during and in relation to any crime of violence ..., uses or carries a firearm, shall ... be sentenced to imprisonment for five years....  In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years....

As the district court recognized, the "second or subsequent conviction" need not be the product of a second or subsequent judgment; if a defendant is found guilty on separate § 924(c) counts, each count after the first is subject to the 20-year mandatory sentence. *See* **Deal v. United States**, ___ U.S. ___, ___, 113 S. Ct. 1993, 1995-99 (1993).

[8]     Indeed, as discussed *supra*, a persuasive rationale for prohibiting judicial participation in plea negotiation is the effect such participation has on the judge's decision to reject or accept the subsequent agreement.  "The judge who suggests or encourages a particular plea bargain may feel a personal stake in the agreement ... and may therefore resent the defendant who rejects his advice." **Adams**, 634 F.2d at 840.

§ 924(c) counts, raising his mandatory minimum by 40 years. In the absence of judicial participation, he might have bargained for only one more § 924(c) count, or added another of the robbery counts (or, perhaps more unlikely, gone to trial). And, as was the case with Gustus, we cannot know whether the court would have accepted such a plea if it were presented in the absence of the court's commitment to a particular sentence increase (40 years).

In sum, because the error was not harmless, we reverse the convictions and vacate the sentences; "a defendant who has pled guilty after the judge has participated in plea discussions should be allowed to replead". *Adams*, 634 F.2d at 839; *see also* **Corbitt**, 996 F.2d at 1135 (reversing defendant's conviction obtained via a plea agreement after judicial participation); **Barrett**, 982 F.2d at 196 (vacating conviction and judgment); **Bruce**, 976 F.2d at 559 (vacating conviction). Under different circumstances in **Adams**,[9] our court ruled that, upon remand, a different district judge should be assigned, in order to "extend the prophylactic scheme established by Rule 11". **Id.** at 842-843.[10]

---

[9] In **Adams**, the defendant pled *not* guilty after judicial participation in plea negotiations and went to trial; thus, our court did not reverse the conviction (because no actual prejudice could be shown). Rather, our court remanded for resentencing before a different judge because of the chance that judicial participation might have infected the sentencing process. **Adams**, 634 F.2d at 842-43.

[10] Following this approach, other circuits have mandated that when a sentence is vacated for judicial participation, the case should be assigned to a different district judge. **Corbitt**, 996 F.2d at 1135; **Barrett**, 982 F.2d at 196.

## III.

For the foregoing reasons, the convictions of Gustus and Miles are **REVERSED**; the sentences **VACATED**; and the cases **REMANDED** for assignment to a different judge.

**VACATED** and **REMANDED**