# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 16, 2012

No. 11-41269

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

ROGELIO SERRANO-LARA,

Defendant-Appellant

Appeals from the United States District Court
for the Southern District of Texas

Before STEWART, Chief Judge, and DEMOSS and GRAVES, Circuit Judges.
JAMES E. GRAVES, JR., Circuit Judge:

Rogelio Serrano-Lara ("Serrano-Lara") appeals the district court's striking of Serrano-Lara's appeal waiver and the sentence imposed.

## FACTS AND PROCEEDINGS

In June 2011, Serrano-Lara pleaded guilty before a magistrate judge pursuant to a written plea agreement to one count of transporting an undocumented alien within the United States for private financial gain. In exchange for Serrano-Lara's guilty plea, the government agreed to dismissal of the remaining charges against him, and to recommend credit for acceptance of responsibility and a two-level United States Sentencing Guidelines ("Guidelines") credit pursuant to an early disposition program. Serrano-Lara

No. 11-41269

acknowledged that the Guidelines did not bind the district court,[1] and, in the plea agreement, the government reserved the right "to set forth or dispute sentencing factors or facts material to sentencing."

The Pre-Sentence Report ("PSR") provided additional details of Serrano-Lara's offense conduct, including that Serrano-Lara searched a group of undocumented aliens as they entered a Brownsville residence and seized their money, and allegedly raped one of the undocumented aliens by telling her that if she did not submit to him he would rape her 13-year-old daughter instead. The PSR further stated that Serrano-Lara once threatened to shoot the 13-year-old girl if she did not stop crying, transported undocumented aliens in the trunk of a vehicle, and while doing so on one occasion, jumped out of the moving car in order to evade apprehension. The PSR assigned Serrano-Lara a Guidelines range of imprisonment of 33 to 41 months, and noted that if the court followed the recommendation of the plea agreement by granting a two-level downward departure for early disposition, the Guidelines range would be 27 to 33 months. The PSR also stated that an upward departure may be warranted, because Serrano-Lara's rape of one of the aliens constituted circumstances of a kind not adequately taken into consideration by the Guidelines.

Serrano-Lara filed numerous objections to the PSR, arguing, *inter alia*, that he did not rape or threaten any undocumented alien, was not a supervisor in the alien trafficking organization, and did not jump out of a moving vehicle with aliens in the trunk.

---

[1] The plea agreement read, in part:
The defendant is also aware that any estimate of the possible sentencing range under the sentencing guidelines that he/she may have received from his/her counsel, the United States, or the Probation Office, is a prediction, not a promise, did not induce his/her guilty plea, and is not binding on the United States, the Probation Office, or the Court.

No. 11-41269

On September 2, 2011, the court issued an order stating that it was considering an upward departure or the imposition of a non-Guidelines sentence. On September 26, 2011, the court, with no objection, adopted the magistrate judge's report and recommendation, accepted Serrano-Lara's guilty plea, and confirmed with Serrano-Lara that he had had the opportunity to review the PSR with his attorney.

During sentencing, the rape victim, *inter alios*, testified that, as reported in the PSR, Serrano-Lara forced her to have sex with him by threatening to rape her 13-year-old daughter if she did not give in to his demands. The government filed a sentencing memorandum, arguing that the district court should depart upward, because Serrano-Lara raped the woman and searched and seized money from the undocumented aliens.

The district court considered Serrano-Lara's objections to the PSR and overruled them, except that the court reduced the three-level adjustment for Serrano-Lara's supervisory role in the offense pursuant to 18 U.S.C. § 3B1.1(b)[2] to a two-level adjustment pursuant to 18 U.S.C. § 3B1.1(c).[3] The court did not grant the two-level downward departure for early disposition, so the Guidelines range of imprisonment was 30 to 37 months. The government further requested that the court impose the statutory maximum prison sentence of 120 months, either as an upward departure based on Serrano-Lara's mistreatment of the aliens that he trafficked, or alternatively, as a variance above the Guidelines range. The court adopted the factual findings of the PSR, except with respect to Serrano-Lara's supervisory role in the offense. The court imposed a non-

---

[2] 18 U.S.C. § 3B1.1(b) states: "[i]f the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels."

[3] 18 U.S.C. § 3B1.1(c) states: "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels."

No. 11-41269

Guidelines sentence of 120 months and granted the government's motion to dismiss the remaining counts.

On November 14, 2011, the final day of sentencing, the court struck the appeal waiver. The government objected the very next day. In a written order entered on November 21, 2011, the court described the circumstances of Serrano-Lara's sentencing – including the rationale for a sentence above the Guidelines range – and overruled the government's objection. Serrano-Lara timely filed a notice of appeal.

## STANDARD OF REVIEW

The issues presented – whether the district court had the authority to strike Serrano-Lara's appeal waiver, and what effect, if any, the court's action had on the sentence imposed – are questions of law, and, therefore, we review the issues *de novo*. *United States v. Baymon*, 312 F.3d 725, 727 (5th Cir. 2002).

## DISCUSSION

A.  *Whether the District Court had the Authority to Strike Serrano-Lara's Appeal Waiver*

There is no urging by either side that Serrano-Lara's guilty plea was improvident, and it is undisputed that he knowingly and voluntarily agreed to waive his right to appeal. Therefore, we only address whether the district court had the authority to strike the valid appeal waiver, which is an issue of first impression for this circuit.

Two decades ago, we addressed a case in which the district court mistakenly advised a defendant at sentencing that he had the right to appeal, despite the existence of an appeal waiver in his plea agreement. *United States v. Melancon*, 972 F.2d 566 (5th Cir. 1992). We held that "any alleged uncertainty on behalf of the district court as to the legality of the agreement does not affect our determination that Appellant's waiver was voluntary, knowing, and permissible." *Id.* at 568.

No. 11-41269

The very next term, we announced that Rule 11 of the Federal Rules of Criminal Procedure[4] "prohibits absolutely a district court from all forms of judicial participation in or interference with the plea negotiation process." *United States v. Miles*, 10 F.3d 1135, 1139 (5th Cir. 1993). We went on to recognize that "[a] district court is free, of course, to reject a plea agreement, Fed. R. Crim. P. 11(e)(4),[5] and may express its reasons for doing so." *Id.* Although the district court may state its reasons for rejecting a plea agreement, it may not also suggest a plea agreement that would be acceptable. *Id.* at 1139-40. When a court goes beyond providing reasons for rejecting the agreement presented and comments on the hypothetical agreements it would or would not accept, it crosses the line established by Rule 11 and becomes involved in the negotiations. *Id.*

Two years after *Miles*, we stated that "[t]he commentary to Rule 11 and our previous decisions make clear that the district court is expected to take an active role in evaluating a plea agreement, once it is disclosed." *United States v. Crowell*, 60 F.3d 199, 204 (5th Cir. 1995). Nevertheless, in *Crowell*, we found

---

[4] "An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions." Fed. R. Crim. P. 11(c)(1).

[5] Former Rule 11(e)(4), slightly modified, is now Rule 11(c)(5), which reads:
If the court rejects a plea agreement containing provisions [under which the government agrees not to bring – or to move to dismiss – other charges, or recommends a particular sentencing range], the court must do the following on the record and in open court (or, for good cause, in camera):
    (A) inform the parties that the court rejects the plea agreement;
    (B) advise the defendant personally that the court is not required to follow the plea agreement and give the defendant an opportunity to withdraw the plea; and
    (C) advise the defendant personally that if the plea is not withdrawn, the court may dispose of the case less favorably toward the defendant than the plea agreement contemplated.
Fed. R. Crim. P. 11(c)(5).

fault with a district judge commenting that "a penalty significantly more severe than that allowed under the first plea agreement would be necessary for an agreement to be acceptable." *Id.*

On the issue of a district court striking a finalized plea agreement's appeal waiver at sentencing, our sister circuits provide persuasive authority. The Eleventh Circuit, in reference to a district judge's encouragement of a defendant to appeal the sentence even though the defendant had waived his right to appeal, held that "[m]odification of the terms of a plea agreement is . . . beyond the power of the district court." *United States v. Howle*, 166 F.3d 1166, 1168 (11th Cir. 1999). "Having approved the plea agreement, the district court had no more right to change its terms than it would have to change the terms of any other contract."[6] *Id.* at 1169; *accord United States v. Black*, 201 F.3d 1296 (10th Cir. 2000) (holding that the district court lacked the authority to strike a plea agreement's appeal waiver at sentencing); *United States v. Ritsema*, 89 F.3d 392, 398-99 (7th Cir. 1996) (Pursuant to Rule 11, "[o]nce the court has accepted a plea agreement . . . it is, as a general rule, bound by the terms of that agreement.").

Here, the district court's striking of the appeal waiver was tantamount to rejection of the plea agreement under Rule 11(c)(5). Hence, the court should have followed the procedure enunciated in that rule. *See* n.5, *supra.* On the other hand, a court choosing to accept a plea agreement does not then have the option to perform a judicial line-item veto, striking a valid appeal waiver or modifying any other terms.

Our prior holdings, together with the persuasive authority of our sister circuits, counsel in favor of prohibiting a district court from striking a valid appeal waiver. Therefore, we hold that the district court did not have the

---

[6] "In extreme circumstances – for instance, if the district court had sentenced [the defendant] to a public flogging – due process may require than an appeal be heard despite a previous waiver." *Id.* at 1169 n.5.

authority to strike Serrano-Lara's appeal waiver, and he has thus waived his right to appeal.

*B. Whether the District Court's Action Affected the Validity of the Sentence*

Our remaining task is to determine what effect, if any, the district court's striking of the appeal waiver had on Serrano-Lara's sentence. Simply put, because Serrano-Lara knowingly and voluntarily waived his right to appeal in an enforceable plea agreement, the sentence stands.[7] *See United States v. Gonzalez*, 259 F.3d 355, 358 (5th Cir. 2001) (citing *Melancon*, 972 F.2d at 568) (holding that the district court's misstatement at sentencing regarding the defendant's right to appeal had no effect on whether the waiver of right to appeal was knowing and voluntary, and there was thus no need for appellate review of the sentence imposed).[8]

## CONCLUSION

For the foregoing reasons, we AFFIRM the sentence imposed and DISMISS Serrano-Lara's appeal.

---

[7] We are not persuaded by Serrano-Lara's unsupported argument in his opening brief that the district court's "usurpation is null and void *ab initio*" and "basically obliterated the entire plea agreement," requiring that we "vacate the sentence and conviction and return the parties to their original position."

[8] In any case, the sentence fell within the statutorily permitted range, and Serrano-Lara explicitly acknowledged in the plea agreement that the Guidelines did not bind the district court. Additionally, the government did not breach the plea agreement, which allowed the government "to set forth or dispute sentencing factors or facts material to sentencing."