NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0071n.06

No. 11-4068

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
*Jan 15, 2013*
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| JOSE ALFONSO PEREZ-YANEZ, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before:  NORRIS, GIBBONS, and DONALD, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**  On February 10, 2011, agents with the Drug Enforcement Administration ("DEA") intercepted a package containing cocaine that was intended for delivery to Jose Alfonso Perez-Yanez.  As a result of that intercepted package, Perez-Yanez was charged with conspiracy to possess with intent to distribute cocaine, possession with intent to distribute cocaine, and illegal reentry.  He filed a motion to suppress physical evidence and statements made at the time of his arrest, which was denied.  Perez-Yanez pled guilty, pursuant to an unconditional written plea agreement, to Counts One and Three of the indictment.  He was sentenced to 121 months' imprisonment on Count One and twenty-four months' imprisonment on Count Three.  In exchange for these guilty pleas, the government agreed to dismiss Count Two.

Perez-Yanez raises two arguments on appeal. First, he claims that his plea was involuntary because the district court improperly induced his plea by coercion. Second, he claims that his motion to suppress should have been granted because (1) he had an expectation of privacy in the package containing cocaine; and (2) he was improperly questioned before being given his *Miranda* warnings. Because Perez-Yanez's plea was voluntary, intelligent, and unconditional, he has waived his right to challenge the district court's denial of his motion to suppress and we now affirm his convictions and sentences.

## I.

On February 9, 2011, DEA agents were contacted about a possible contraband package en route to Dayton, Ohio, via Federal Express ("FedEx"). The package was described as an 18 x 18 x 18 inch FedEx box addressed to Herbert Wayne, 4411 Burkhardt Avenue, Apartment C-10 in Dayton, Ohio. On February 10, DEA agents, Dayton police detectives, and a narcotics-detecting canine monitored inbound freight at FedEx and observed this package, to which the canine alerted. Agents obtained a search warrant to open the package, which contained an emptied amplifier filled with six plastic-wrapped blocks. The blocks tested positive for cocaine. Agents then repackaged the blocks with fake cocaine so that a controlled delivery could be made by an undercover agent.

That evening, agents posing as FedEx couriers delivered the package to the Burkhardt Avenue address. When the agents knocked at the apartment door, Armando Leon-Talavera answered and accepted delivery of the package. Leon-Talavera printed the name "Jose Perez" on the agents' FedEx "Signature Record" form. The agents left the package with Leon-Talavera and left the apartment. A short time later, Dayton police officers executed a search warrant at the apartment and

arrested Leon-Talavera. Leon-Talavera told officers that he was not the intended recipient of the package but had accepted delivery in exchange for $100. Leon-Talavera was asked to contact the intended recipient, and did so. In a recorded call, the intended recipient, later identified as Jose Alfonso Perez-Yanez, said that he would arrive in five minutes. A few minutes later, a vehicle with two individuals inside pulled into the parking lot. The passenger, Perez-Yanez, knocked on the apartment door and was greeted by the officers. After Perez-Yanez was asked his name, and responded "Jose Pena," he voluntarily told the officers that Leon-Talavera had nothing to do with the package. The officers then asked either "who did?" or "do you have anything to do with this?" Perez-Yanez responded that he, Perez-Yanez, had "everything to do with" it. The officers subsequently advised Perez-Yanez of his *Miranda* rights in Spanish, his native language. Perez-Yanez waived those rights.

## II.

Perez-Yanez challenges the denial of his motion to suppress, arguing that the officers' pre-*Miranda* question, alternately described as "who did?" or "do you have anything to do with this?" requires suppression of all subsequent statements by Perez-Yanez. Perez-Yanez also argues that he had a reasonable expectation of privacy in the package intended for delivery to him. However, these arguments are waived by Perez-Yanez's unconditional plea of guilty. Once an unconditional plea has been entered, a defendant "'may only attack the voluntary and intelligent character' of the plea." *United States v. Ferguson*, 669 F.3d 756, 763 (6th Cir. 2012) (quoting *United States v. Kirksey*, 118 F.3d 1113, 1115 (6th Cir. 1997)). "[A] guilty pleading defendant may not appeal an adverse pre-plea ruling on a suppression of evidence motion unless he has preserved the right to do so by entering a

conditional plea of guilty in compliance with Fed. R. Crim. P. 11(a)(2)." *United States v. Herrera*, 265 F.3d 349, 351 (6th Cir. 2001). Perez-Yanez failed to preserve this right in compliance with Rule 11(a)(2) by express written preservation of the right in the plea agreement, with the consent of the government. Moreover, in his plea agreement, Perez-Yanez agreed unconditionally to waive his appellate rights: "To the extent permitted by law, defendant gives up the right to appeal his conviction and sentence, including the manner in which the sentence is determined, provided that the sentence is at or below the statutory maximum."

Perez-Yanez attempts to obtain review of his motion to suppress by alleging that his plea was "coerced" by the district court and was therefore involuntarily made. The government responds that Perez-Yanez has waived his right to challenge the voluntariness of his plea, as his brief lacks developed argumentation, citing *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones."). Perez-Yanez's entire argument on the issue was presented in four sentences:

> In the present matter, the Judge indicated his strong displeasure in the fact that the Appellant had decided not to go forward with his plea as scheduled. Only after doing so, did the Appellant who obviously had strong misgivings, agree to plead. Therefore, this plea should be vacated since it was not voluntarily given and violates the Appellant's right to due process. It is also a violation of Federal Rule of Crim. P. 11(c)(1).

Even if this extraordinarily limited argumentation were to be deemed adequate, we would still deny relief, as Perez-Yanez has failed to establish that his unconditional plea was involuntarily made.

Perez-Yanez did not raise the argument that his plea was involuntarily made in the district court and never sought to withdraw his guilty plea. Therefore, this argument is reviewed for plain error. *See United States v. Bazazpour*, 690 F.3d 796, 801 (6th Cir. 2012). Plain error review allows this court to find error only if there is "(1) 'error,' (2) that is 'plain,' and (3) that 'affect[s] substantial rights.'" *Id.* (quoting *Johnson v. United States*, 520 U.S. 461, 467 (1997)). Even if such an error is found, we may only reverse if the error "'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" *Id.* (quoting *Johnson*, 520 U.S. at 467.)

Perez-Yanez argues that the district court "indicated [its] strong displeasure" in Perez-Yanez's choice not to go forward with his plea. In light of the court's comments, Perez-Yanez argues, he grudgingly agreed to plead guilty. Therefore, he asserts that his plea should be vacated as involuntarily given, a violation of his right to due process, and a violation of Federal Rule of Criminal Procedure 11(c)(1). In response, the government asserts that the exchange that Perez-Yanez claims renders his guilty plea involuntary occurred outside of his presence, with counsel in chambers, and that any impropriety was cured by the subsequent Rule 11 colloquy.

Perez-Yanez had been prepared to go to trial on June 20, 2011. Eleven days prior to that date, the parties notified the court that they had reached a plea agreement and the jury trial scheduled for June 20 was converted into a change-of-plea hearing. Minutes before the scheduled start time of that hearing, counsel for Perez-Yanez told the court in chambers that Perez-Yanez "indicated to me this morning that he wishes additional time to think about this. This is the first time that I've heard this, Judge." The district court responded:

In the spirit of full disclosure, I'm not pleased. He signed a Plea Agreement, and that was represented to me. I came up today for this and this only, especially because I wanted him to have some comfort with the judge so that he wasn't entering a plea in front of one judge and then facing sentencing in front of another judge, and so I'm here.

If this is going to resolve by plea at some point in time, then one would think that he would try and be responsive to the sentencing judge.

If he needs some time to think it through, you know, he can take some time. I think the moment is at hand, and if he spits the bit this morning, I don't think that redounds to his benefit. If he enters a plea, I'll be as responsive as I can at the time of sentencing.

We talked about the possibility of a 5K situation developing and his discomfort with that; and in order to facilitate that, I came up today rather than put him in front of a magistrate judge and then have him chatting with the agents and the prosecutor this morning.

I think you need to convey to him that the moment is at hand and you're welcome, because it's all on the record, to tell him my reaction. The fact of the matter is I wonder if there's any basis in the facts and law to avoid taking responsibility and getting credit for that in terms of the guideline calculation.

If he's got a good faith defense, great. If he doesn't, not facing that reality today as scheduled, he's not being realistic, and I think you need to convey some of that, or all of that, or whatever you choose.

Now having said all of that, I'm fully capable of taking a deep breath and dealing with whatever we have. But everybody got a chance to state their reaction, and now I've stated mine.

So, if you're still breathing, you can react to that or choose not to or confer with him but, you know, I try and be honest and forthright, and that's my reaction.

Thirteen minutes later, after what counsel reported as "some very intense conversations" with

Perez-Yanez, Perez-Yanez indicated to his counsel that he was ready to go forward. The district

court then expressed that "we need to be careful at the time of the plea that it is voluntary, and we'll

run through that on the record." During the change-of-plea colloquy, the court asked Perez-Yanez

numerous questions to thoroughly establish the voluntariness of his guilty plea. Specifically, the

court asked, "Is there anything I have done that's forced you to sign this agreement?" Perez-Yanez

replied, "No, sir."

Perez-Yanez argues that the in-chambers exchange described above, between the district

court and counsel, violates the prohibition against judicial participation in plea negotiations. Fed.

R. Crim. P. 11(c) ("An attorney for the government and the defendant's attorney, or the defendant

when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in

these discussions.") When we have found that a district court improperly participated in plea

negotiations, the court clearly endeavored to facilitate a plea. *See United States v. Barrett*, 982 F.2d

193, 194 (6th Cir. 1992). In *Barrett*, we held that the district court improperly participated when it

first suggested a plea with a right of appeal from the sentence and then suggested that any agreed-

upon guidelines interpretation would be irrelevant because the sentence would likely exceed the

guidelines range. *Id.* The district court then commented on the merits of the case, stating: "I truly

don't see what defense he has. My understanding is that your investigator has found no people who

he has been looking for, which doesn't surprise me one iota." *Id.* Other courts have found improper

participation where a district court commented on the hypothetical plea agreements it would or

would not accept, *United States v. Serrano-Lara*, 698 F.3d 841, 844 (5th Cir. 2012), where the court

commented at length on the weight of the government's evidence and advised the defendants that

they would "be better off pleading to the indictment," *United States v. Bradley*, 455 F.3d 453, 462

(4th Cir. 2006), and where the court suggested specific mandatory minimums that would apply based

on whether the defendant pled guilty or went to trial, *United States v. Casallas*, 59 F.3d 1173, 1177 (11th Cir. 1995).

By contrast, we have held that a district court did not improperly participate in plea negotiations where there was "no indication in the record that [the court] had discussions with counsel concerning the facts of [the defendant's] case, any aspect of sentencing, or [the defendant's] possible guilt or innocence." *United States v. Rankin*, 94 F.3d 645, at *2 (6th Cir. 1996) (*per curiam*).

Although the district court in this case expressed frustration at the last-minute possibility of another change of plea, the court expressed its willingness to go forward and to respect Perez-Yanez's decision, whatever that might be. Admittedly, the district court would have been well-advised not to say anything that could have been construed to connect Perez-Yanez's need for additional time with his treatment at sentencing. In light of the context of the court's comments, however, we find that, at worst, the district court encouraged defense counsel to convey to Perez-Yanez that there would be no benefit to refusing to plead guilty without a good faith defense. The district court made no comment on whether such a good faith defense existed in Perez-Yanez's case. We reiterate the importance of district courts' refraining from facilitating plea agreements and do not retreat from our precedent so holding. We simply find that, in this instance, the district court did not improperly participate in plea negotiations.

Further, Perez-Yanez has not provided any reason for us to question his statements during the court's thorough Rule 11 colloquy, in which he asserted that his plea was voluntarily made. *See Baker v. United States*, 781 F.2d 85, 90 (6th Cir. 1986) (holding that "where the court has

scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry" (internal quotation marks omitted)). The court confirmed that Perez-Yanez had received a copy of his indictment and that he understood the written charges against him, possible defenses, maximum punishments, and immigration consequences of pleading guilty. The court thoroughly explained the sentencing process. The court also advised Perez-Yanez of the trial rights that he relinquished by pleading guilty. At the court's request, the Assistant United States Attorney then summarized the "essential terms" of the plea agreement and read the statement of facts contained in the agreement. Finally, the court confirmed verbally with Perez-Yanez that he understood the agreement, was not made any promises or assurances, was not threatened, and was not forced by the district court to sign the agreement. The court concluded by stating on the record that it had the opportunity to "observe the appearance and responsiveness of Mr. Perez-Yanez . . . and . . . [found that] his pleas of guilty are knowing and voluntary pleas supported by an independent basis in fact containing each of the essential elements of the offense."

Therefore, even if Perez-Yanez did not waive his voluntariness argument by failing to develop it in his opening brief, careful review of the transcript of his change-of-plea colloquy demonstrates that the plea was voluntarily made. Having made a voluntary, unconditional plea, Perez-Yanez has waived his right to appeal the denial of his pre-plea motion to suppress.

**III.**

For the foregoing reasons, we affirm Perez-Yanez's convictions and sentences.